## MOIR v. UNITED STATES.
### No. 4049.

Circuit Court of Appeals, First Circuit.
May 18, 1945.

Robert G. Dodge, of Boston, Mass. (Walter A. Barrows, of Boston, Mass., of counsel), for appellant.

Helen Goodner, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, and Leland T. Atherton, Sp. Assts. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

In outline the case is thus: An executor petitions the Tax Court for redetermination of a large deficiency in estate taxes claimed by the Commissioner. The Tax Court decides in petitioner's favor. Three months later, the Tax Court's decision becomes final, putting petitioner's victory beyond the possibility of upset on further review. The counsel for the executor presents his bill, the amount of which depended upon the ultimate outcome of the litigation and upon how high up the case had to be fought. The executor pays the bill—a proper expense of administration, deductible from the gross estate. But it is too late to reopen the Tax Court proceedings to make the corresponding further adjustment in the estate tax, notwithstanding the fact that an overpayment of estate tax is demonstrable by a recomputation of the tax after taking into account the aforesaid additional deduction from the gross estate. Is the executor also barred, either by Section 319(a) of the Revenue Act of 1926 as amended, 26 U.S.C.A. Int.Rev. Acts, page 259, or by the general principles of res judicata, from filing with the Collector a claim for refund of the overpayment and, if such claim is disallowed by the Commissioner, from maintaining suit in the federal district court for recovery of the amount of such overpayment?

John Moir died September 20, 1938. His son, the present appellant, as executor of the will, filed an estate tax return on December 20, 1939, and paid a tax of $895,-417.45 shown thereon to be due. Among the deductions from gross estate claimed in the return was one for $10,000 as an estimated attorneys' fee. On May 3, 1941, the plaintiff paid a further estate tax of $77,316.19 then admitted to be due.

On September 23, 1941, the Commissioner issued a deficiency notice asserting that an additional sum of $1,490,630.13 was due and payable by appellant as executor.

Thereafter, on November 7, 1941, appellant filed with the Board of Tax Appeals his petition for redetermination of the deficiency. The petition challenged the Commissioner's determination upon three grounds: (1) That the Commissioner erroneously added to the gross estate approximately $3,000,000 as the value of property alleged to have been transferred in contemplation of death; (2) that the Commissioner erroneously increased by the sum of $103,000 the valuation of the decedent's interest in a certain trust; and (3) that the Commissioner erroneously disallowed the deduction of $10,000 as an estimated attorneys' fee. In connection with the third item, the petition set forth that, in the administration of the estate, it had been necessary for the executor to incur an obligation for substantial attorneys' fees for legal services already rendered and to be rendered; that the amount of such fees was estimated in the tax return as $10,000, "of which $5,000 has already been paid"; that the amount "necessary to cover the fair value of the remaining services cannot now be determined, but it will certainly not be less than is estimated in the tax return. The petitioner

ntends that the Commissioner improperly allowed the deduction."

t the trial before the Board on April 942, the executor did not press his claim t the deduction for attorneys' fees was properly disallowed.[1] On September 24, 2, the Board promulgated its findings of t and opinion (47 B.T.A. 765). It ruled he taxpayer's favor that the properties ued at $3,000,000 had not been trans-rred in contemplation of death—the ost important issue in the case—but sus-ined the Commissioner's action in in-reasing, by the amount of $103,000, the aluation of decedent's interest in the trust. he findings and opinion made no mention of the disallowance of the deduction for attorneys' fees. On October 22, 1942, the executor paid the deficiency as redeter-mined by the Board. On November 4, 1942, the Board, under its new name The Tax Court of the United States, entered its formal decision redetermining the de-ficiency in the sum of $53,140.07. Neither party sought review of this decision, and it became final three months thereafter.

The appellant, as executor, made pay-ments to his attorneys as follows:

| | |
|---|---|
| April 7, 1941, | $ 5,015.85 |
| March 16, 1942, | 5,013.35 |
| November 21, 1942, | 5,169.17 |
| February 19, 1943, | 25,000.00 |

These payments represented charges of $40,000 for legal services and $198.37 for incidental disbursements in the course of the administration of the estate, and prin-cipally in connection with the proceedings relating to the estate tax. The first two payments listed above were made prior to the Board's decision determining the de-ficiency, the third was made before such decision became final, and the final pay-ment was made shortly after such decision had become final.

It is claimed by the executor, and not denied by the government, that these pay-ments aggregating $40,198.37 were rea-sonable in amount and proper administra-tion expenses deductible from the taxable estate under Section 303(a) (1) of the Revenue Act of 1926 as amended, 26 U.S. C.A. Int.Rev.Acts, page 232, and that the allowance of such deduction would reduce

the estate tax by the sum of $14,712.60. Accordingly, the executor filed with the Collector on April 15, 1943, a claim for re-fund in that amount. The Commissioner disallowed the claim on the ground that, in-asmuch as the estate tax had been before the Tax Court, the refund was precluded by the terms of Section 319(a) of the Revenue Act of 1926 as amended.

Thereafter, on February 7, 1944, the executor filed the present complaint in the court below demanding judgment against the United States in the sum of $14,712.60 with interest and costs.

The defendant filed a double-barreled motion asking the district court (1) to dis-miss the action on the ground that it affirmatively appeared from the face of the complaint that the court lacked jurisdiction of the subject matter in view of Section 319(a) of the Revenue Act of 1926 as amended, and (2) to dismiss the action be-cause the complaint failed to state a claim against defendant upon which relief could be granted, in that it affirmatively appeared on the face of the complaint that the matter at issue had become res judicata by reason of the decision of the Tax Court. In the alternative, the defendant moved for a summary judgment dismissing the action on the ground that there was no genuine issue as to any material fact and that the defendant was entitled to judg-ment as a matter of law.

The district court granted the motion for a summary judgment, and on October 15, 1944, entered judgment for the defend-ant, from which judgment the present ap-peal is taken. In an accompanying opinion, the court based its decision upon the "clear and unambiguous" language of Section 319 (a) as constituting an absolute bar to the plaintiff's action, irrespective of the gen-eral principles of res judicata.

The applicable provisions of the Revenue Act of 1926 are as follows:

Section 308(a). "If the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the executor by registered mail. Within 90 days after such notice is mailed (not counting Sun-

---

[1] An affidavit by the Clerk of the Board, submitted to the court below by the de-fendant, recites that the Commissioner's brief filed with the Board contained the following statement: "Since no evidence was offered by the petitioner with respect to this issue [deduction for attorneys' fee], the Board will conclude that the action of the Commissioner of Internal Revenue is conceded by the petitioner."

day or a legal holiday in the District of Columbia as the ninetieth day), the executor may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. * * *" 44 Stat. 75, as amended by § 501 of the Revenue Act of 1934. 48 Stat. 755, 26 U.S.C.A. Int.Rev. Acts, page 245.

Section 319(a). "If the Commissioner has mailed to the executor a notice of deficiency under subdivision (a) of section 308 and if the executor after the enactment of this Act files a petition with the Board of Tax Appeals within the time prescribed in such subdivision, no refund in respect of the tax shall be allowed or made and no suit for the recovery of any part of such tax shall be instituted in any court, except—

"(1) As provided in subdivision (c)[2] of this section or in subdivision (i)[3] of section 312 or in subdivision (b)[4], (e), or (g) of section 318 or in subdivision (d)[5] of section 1001; and

"(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Board which has become final; and

"(3) As to any amount collected after the statutory period of limitations upon the beginning of distraint or a proceeding in court for collection has expired; but in any such claim for refund or in any such suit for refund the decision of the Board which has become final, as to whether such period had expired before the notice of deficiency was mailed, shall be conclusive. * * *" 44 Stat. 84.

Appellant contends that Section 319(a) should not be read literally and narrowly but should be liberally construed as being intended to embody the familiar principles of res judicata; and that the earlier decision of the Tax Court redetermining the amount of the deficiency is not res judicata because the present suit for refund is based upon events which happened after the termination of the proceedings before the Tax Court and could not have been litigated in the earlier case. The point asserted is that the amount of the attorneys' fee could not be ascertained with reasonable certainty prior to the time when the Tax Court's decision became final, for, until then, it could not be known whether the litigation would be carried higher, or whether the decision of the Tax Court in the taxpayer's favor would ultimately be sustained.

The language of Section 319(a) is very explicit. It says that when a petition for redetermination of an estate tax deficiency has been duly filed with the Tax Court, "no refund in respect of the tax shall be allowed or made and no suit for the recovery of any part of such tax shall be instituted in any court," except in certain enumerated instances. In effect appellant asks us to engraft another exception upon the language of the section. It may be questioned whether this would be within the permissible bounds of statutory construction even if support for appellant's view were to be found in the legislative history. However that may be, the indications in the legislative history in fact rather point the other way.

An extract from the Report of the Senate Committee on Finance is set forth in the footnote.[7] Appellant stresses the italicized portion of the quoted extract as

---

[2] Relates to an overpayment found by the BTA.

[3] In cases of jeopardy assessments, where the amount collected exceeds the deficiency determined by the BTA, the subdivision requires that the excess be refunded.

[4] Subdivisions (b), (e), and (g) relate to petitions pending with the BTA at the effective date of this Act.

[5] If a decision of the Tax Court determining a deficiency is reversed on review and such deficiency has meanwhile been collected, the amount so paid is to be refunded.

[6] Taxpayer points to the applicable Treasury Regulation as indicating that most of the attorneys' fees here involved could not have been deducted. The Regulation follows:

"The executor or administrator, in filing the return, may deduct such an amount of attorney's fees as has actually been paid or which at that time it is reasonably expected will be paid. If on the final audit of a return the fees claimed have not been awarded by the proper court and paid, the deduction will, nevertheless, be allowed, provided the Commissioner is reasonably satisfied that the amount claimed will be paid and that it does not exceed a reasonable remuneration for the services rendered, taking 'into account the size and character of the estate and the local law and practice. * * *" Reg. 80, Art. 34. Cf. Proctor v. Hassett, D.C.Mass., 1943, 52 F.Supp. 12.

[7] The following is taken from the Committee's discussion of Section 284(d), which

bearing an implication that it is still open to the taxpayer to sue for a refund based upon matters which could not be litigated and determined in a prior proceeding before the Tax Court. We think, however, that such an interpretation is negatived by the flat statement in the second quoted paragraph to the effect that, if the taxpayer elects "to file a petition with the Board his entire tax liability for the year in question (except in case of fraud) is finally and completely settled by the decision of the Board when it has become final." When the committee goes on to say that it is the purpose of the bill "that all questions arising prior to the time the decision of the Board has been rendered as to the right of the Commissioner to assess and collect the tax * * * shall be determined by the Board," it apparently has reference to the express exceptions in the section, some of which do relate to events taking place after the decision of the Board has been rendered; for instance, where a deficiency found by the Tax Court has been wrongfully collected after the expiration of the statutory period of limitations upon the beginning of distraint, or where the Commissioner has wrongfully collected an amount in excess of that computed in accordance with the decision of the Tax Court.

The taxpayer has cited no case, and we have found none, quite on all fours with the facts of the case at bar. However, many courts have attributed to Section 319(a) (and to its counterpart, Section 284(d), 26 U.S.C.A. Int.Rev.Acts, page 220 relating to income taxes) a finality which cannot be explained merely on general principles of res judicata. Merrill v. United States, D.C.N.Y., 1944, 55 F. Supp. 674; Warren Mfg. Co. v. Tait, D. C. Md.1932, 60 F.2d 982; James v. United States, 1930, 38 F.2d 140, 69 Ct.Cl. 215, certiorari denied 282 U.S. 856, 51 S.Ct. 32,

contains provisions with reference to income taxes corresponding in every detail with Section 319(a) dealing with estate taxes: "The House bill also provides in section 281(d) that when the deficiency letter has been sent to the taxpayer, whether or not he takes the case to the Board of Tax Appeals, his right to claim or sue for a refund for the year to which the deficiency letter relates is forever barred. This provision seems to the committee too drastic, and it is accordingly proposed in section 284(d) of the bill that the taxpayer's right to claim and sue for refund shall be barred only if he takes the case to the Board, thus preserving to him the option of paying the tax and then proceeding before the Department and the courts to recover any excess payments by a claim or suit for refund.

But if he does elect to file a petition with the Board his entire tax liability for the year in question (except in case of fraud) is finally and completely settled by the decision of the Board when it has become final, whether the decision is by findings of fact and opinion, or by dismissal, as in case of lack of prosecution, insufficiency of evidence to sustain the petition, or on the taxpayer's own motion. The duty of the Commissioner to assess the deficiency thus determined is mandatory, and no matter how meritorious a claim for abatement of the assessment or for refund he can not entertain it, nor can suit be maintained against the United States or the collector. Finality is the end sought to be attained by these provisions of the bill, and the committee is convinced that to allow the reopening of the question of the tax for the year involved either by the taxpayer or by the Commissioner (save in the sole case of fraud) would be highly undesirable.

The bill provides in section 274(a) that except in certain enumerated cases the Commissioner can take no action to assess and collect a deficiency until he has mailed to the taxpayer a notice of the deficiency, and if the taxpayer has taken the case to the Board, until the decision of the Board has become final. Such decision becomes final: (1) on the expiration of the time allowed for appealing to the circuit court of appeals, or (2) where such an appeal has been taken, when the appellate courts have disposed of the case. The bill, therefore, contains in section 274(a) a provision that despite section 3224 of the Revised Statutes (which prohibits injunctions to restrain the assessment or collection of the tax) the taxpayer may in a proper case go into court for an injunction to restrain the Commissioner from assessing or collecting a deficiency until the procedure outlined in the bill has been completed.

*It is the purpose of the bill that all questions arising prior to the time the decision of the Board has been rendered as to the right of the Commissioner to assess and collect the tax, including the question as to whether or not the statute of limitations has run before the mailing of the deficiency letter, shall be determined by the Board, and by the courts on appeal from the Board."* S.Rep.No.52, 69th Cong., 1st Sess., pp. 25, 26.

75 L.Ed. 758; see Bindley v. Heiner, D.C. Pa., 1930, 38 F.2d 489. It is to be noted that, under Section 319(a), it is the filing of a petition in the Tax Court, rather than the decision of the Tax Court, which operates to deprive district courts of jurisdiction to entertain a subsequent suit for refund.

In the view we take of the effect of Section 319(a), it becomes unnecessary to consider whether the earlier decision of the Tax Court would operate to bar the present suit on ordinary principles of res judicata. In support of the proposition that the Tax Court's decision would not be res judicata, appellant relies mainly on Cleveland v. Higgins, D.C.N.Y.1943, 50 F.Supp. 188. However, the decision in this case has recently been reversed by the Circuit Court of Appeals for the Second Circuit in Cleveland v. Higgins, 148 F.2d 722.

It may be that the strict provisions of Section 319(a), as we have applied them here, do work a hardship on taxpayers in certain situations. For instance, losses from fire or theft incurred during the settlement of the estate are deductible from the gross estate under Section 303(a) (1). Appellant points out that if, after a decision of the Tax Court redetermining a deficiency has become final, the estate should suffer such a loss, the executor would be utterly without any remedy to obtain the corresponding refund under the literal reading of Section 319(a); this, despite the fact that the deductibility of such loss could not have been litigated in the Tax Court proceedings because it had not

then occurred. Appellant insists that he is in a similar unfortunate position in the case at bar, under the ruling of the district court. Perhaps for purposes of this case we must assume that this is so, since the complaint was disposed of below by the entry of a summary judgment for the defendant in the face of allegations in the complaint that, "As a practical matter it was impossible to determine the amount of attorneys' fees until the final disposition of the litigation, because the proper amount thereof depended upon whether appeals were taken from the Board's decision and upon the final result of the case," and that the pending claim for refund "could not have been litigated in that proceeding or adjudicated by that decision." [8] But relief from such hardships, if they exist, must come from Congress, by appropriate modification of the section. It does seem that the possibly harsh operation of Section 319(a) in situations like the present, and in other exceptional cases which might be suggested, deserves consideration by the Congress.

We have not overlooked the fact that there is a weakness in the taxpayer's case even on his own theory, in that it appears that the pleadings before the Tax Court did raise an issue as to the deductibility of counsel fees, and that $15,000 of the fees, upon which the claim for refund was based, were paid prior to the date when the decision of the Tax Court became final.

The decision of the District Court is affirmed.

[8] Despite these allegations in the complaint (which come near to being conclusions of law), we are not sure that it would have been impossible to litigate in the Tax Court proceedings the deduction for attorneys' fees. Might the procedural problem be handled in this way?: Let the taxpayer claim in the Tax Court an appropriate deduction for attorneys' fees on the assumption of a favorable decision upon his petition for redetermination of the deficiency, and upon the further assumption that the decision of the Tax Court would become final without further review. Let the taxpayer claim in the alternative a larger deduction for attorneys' fees on the assumption that such decision of the Tax Court would be reviewed by the circuit court of appeals and by the Supreme Court, and ultimately affirmed. The Tax Court, then, in redetermining the deficiency, could allow a deduction for attorneys' fees in a reasonable amount based upon the assumption that the litigation would end there. That would take care of a case like the present, because in fact the Commissioner did not seek review of the Tax Court's decision. But if the Commissioner seeks review of the Tax Court's decision, the taxpayer might bring a cross-petition for review upon a claim that the allowance for attorneys' fees was insufficient in view of the prolongation of the litigation. In this way the question of the proper allowance for attorneys' fees would remain open for final determination by the Tax Court when the case is finally remanded to it by the reviewing court. It must be admitted that this suggested procedure is somewhat cumbersome.