238 F.2d 447
 UNITED STATES of America, Appellant,
v.
Monte L. WOLF, Executor of the Estate of Harry J. Wolf, deceased, Appellee.
UNITED STATES of America, Appellant,
v.
Monte L. WOLF, Transferee of the Estate of Jennie Wolf, deceased, Appellee.
UNITED STATES of America, Appellant,
v.
Blossom M. GRAYSON, Transferee of the Estate of Jennie Wolf, deceased, Appellee.
UNITED STATES of America, Appellant,
v.
Charlotte C. COHON, Transferee of the Estate of Jennie Wolf, deceased, Appellee.
UNITED STATES of America, Appellant,
v.
Manuel SCHNITZER, Harold Schnitzer and Leonard Schnitzer, Executors of the Estate of Sam Schnitzer, deceased, Appellees.
 Nos. 15011-15015.
 United States Court of Appeals Ninth Circuit.
 November 14, 1956.
 
 Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Kenneth E. Levin, Sp. Assts. to Atty. Gen., C. E. Luckey, U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for appellant.
 Jacob, Jones & Brown, S. J. Bischoff, Portland, Or., for appellees.
 Before HEALY, POPE and LEMMON, Circuit Judges.
 POPE, Circuit Judge.
 
 
 1
 These cases, consolidated for trial, involve the income and victory tax of the members of a partnership known as Alaska Junk Co. for the years 1942-43. The partnership had delivered $202,000 plus worth of goods to Oregon Electric Steel Rolling Mills, a corporation, owned by the four partners, and a fifth party. Oregon Electric failed without paying the amounts charged to it on Alaska's books as an account receivable. The amount was written off as a bad debt loss, but this was disallowed by the Commissioner who also attacked the returns of the separate partners on the ground that it was not a bona fide partnership. The Board of Tax Appeals on petition for redetermination upheld the validity of the partnership but sustained the Commissioner in disallowing the bad debt loss on the ground that the delivery of goods to Oregon Electric was not a sale but a capital contribution. The decision of the Tax Court, 13 T.C. 43, was affirmed per curiam by this court, 183 F.2d 70, and certiorari was denied. 340 U.S. 911, 71 S.Ct. 291, 95 L.Ed. 658. After computation of the deficiency resulting from the Tax Court's decision pursuant to Tax Court Rules, Rule 50, 26 U.S.C.A. (I.R.C. 1954) § 7453 (hereafter mentioned), the taxpayers paid the amount thus ascertained pursuant to the judgment of the tax court.
 
 
 2
 The taxpayers brought these actions in the district court seeking recovery of an overpayment alleged to have resulted from paying the amount computed in consequence of the tax court's decision. The theory of the actions was that the original returns made by the taxpayers had disclosed profits made on the sale of this merchandise to Oregon Electric which the tax court had held was no sale at all; therefore the total amount paid by them on account of their 1942-1943 taxes was excessive in that it included an overpayment to the extent of the tax calculated upon a non-existent profit from the supposed sale to Oregon Electric.
 
 
 3
 There were pre-trial orders in the court below in which the parties stipulated to the facts which are basic to the claim of the plaintiffs-appellees sought to be enforced here. In case No. 15011, the stipulation (which is in substance the same as those in the other cases), contained the following paragraph: "As a result of said adjudication, [that these were not sales but capital contributions] it follows that the `sales' to Oregon Electric Steel Rolling Mills were erroneously carried on the books of the Alaska Junk Company as accounts receivable; they were erroneously included in the gross income of the partnership for 1942 and 1943; the income and victory taxes paid by the partners including Harry J. Wolf on their distributive shares therefrom under the original returns, were erroneously paid; and the amounts of such `sales' should have been excluded from the gross income of Alaska Junk Company, thus reducing the amount of the net income reportable by said Alaska Junk Company, and thus reducing the amount of income reportable by the deceased, Harry J. Wolf, on his individual income and victory tax return for the taxable year 1943."
 
 
 4
 It will be noted that it was thus stipulated that as a matter of fact the net income reportable by Alaska Junk had been overstated and the income and victory taxes paid by the partners for 1942-43 included sums which were overpayments because they represented profits on what had been treated as sales of these goods.
 
 
 5
 The appellant claims however that notwithstanding this stipulation that there was actually an overpayment made, yet plaintiffs cannot maintain these actions because of (1) the provisions of § 322 (c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 322(c); or, in the alternative, (2) because of res judicata or collateral estoppel.
 
 
 6
 The appellees meet these contentions by asserting that their cases came within the second exception found in § 322(c) and that in any event the ordinary rules of res judicata or collateral estoppel have no application here.
 
 
 7
 Section 322(c), here invoked, provided as follows: "* * * (c) Effect of petition to Tax Court. If the Commissioner has mailed to the taxpayer a notice of deficiency under section 272(a) and if the taxpayer files a petition with the Tax Court within the time prescribed in such subsection, no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except —
 
 
 8
 "(1) As to overpayments determined by a decision of the Tax Court which has become final; and
 
 
 9
 "(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final; and
 
 
 10
 "(3) As to any amount collected after the period of limitation upon the beginning of distraint or a proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Tax Court which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive."
 
 
 11
 The taxpayers call attention to the admitted fact that their right to claim the refund here arose for the first time after the tax court had affirmed the Commissioner's determination that the merchandise constituted a capital contribution. They say that then and not before then did this overpayment appear. Because the cause of action for the recovery of this overpayment arose out of the decision of the tax court, and because the payments in dispute could not be regarded as overpayment until after the tax court determination became final, and the deficiencies were paid, taxpayers contend that the second exception quoted above covers their case; — that it must have been designed to permit persons in their situation to make recoveries of overpayments where the fact that an excess tax was collected was the later and direct result of the tax court's decision.
 
 
 12
 We have concluded that the second exception upon which taxpayers rely cannot be construed to have the meaning which they attach to it. It is plain that § 322(c) was intended to have a broad general application so as to provide that if the taxpayer files a petition with the tax court, the mere filing of the petition operates to deprive the district court of jurisdiction to entertain a subsequent suit for refund. Moir v. United States, 1 Cir., 149 F.2d 455, 460. As stated in Elbert v. Johnson, 2 Cir., 164 F.2d 421, 424, "It is not the decision which the Tax Court makes but the fact that the taxpayer has resorted to that court which ends his opportunity to litigate in the District Court his tax liability for the year in question." To say that exception No. 2 has the broad application which the appellees claim for it, would, we think, give it a more extensive reach than Congress intended. At any rate, it is apparent that this is the view which the courts have taken, and we are unable to find any decisions which sustain the taxpayers' contention here.
 
 
 13
 In Moir v. United States, supra, the fact of an overpayment of an estate tax developed after decision by the tax court on the petition for redetermination of the estate tax had become final. There the executor's petition for redetermination had been decided in his favor. After the decision was final, counsel for the executor presented his bill, the amount of which had depended upon the outcome of the litigation. The executor paid the bill which was a proper expense and deductible from the gross estate, but it was too late to reopen the tax court proceedings to make further adjustment in the estate tax. The overpayment was demonstrable. It was held that the executor was barred by the section of the then existing Revenue Code which was the predecessor of and in all important respects identical to § 322(c). The court, while noting the provisions of exception (2), clearly did not regard it as warranting the action in the district court there attempted for the purpose of recovery of the admitted overpayment. It said, 149 F.2d at page 460: "It is to be noted that, under Section 319(a), it is the filing of a petition in the Tax Court, rather than the decision of the Tax Court, which operates to deprive district courts of jurisdiction to entertain a subsequent suit for refund.
 
 
 14
 "In the view we take of the effect of Section 319(a), it becomes unnecessary to consider whether the earlier decision of the Tax Court would operate to bar the present suit on ordinary principles of res judicata. * * *
 
 
 15
 "It may be that the strict provisions of Section 319(a), as we have applied them here, do work a hardship on taxpayers in certain situations. * * * Appellant points out that if, after a decision of the Tax Court redetermining a deficiency has become final, the estate should suffer such a loss, the executor would be utterly without any remedy to obtain the corresponding refund under the literal reading of Section 319(a); this, despite the fact that the deductibility of such loss could not have been litigated in the Tax Court proceedings because it had not then occurred. Appellant insists that he is in a similar unfortunate position in the case at bar, under the ruling of the district court. * * * But relief from such hardships, if they exist, must come from Congress, by appropriate modification of the section."
 
 
 16
 That case makes footnote references to the legislative history of the section which discloses that it was the purpose of the enactment to make an election to file a petition with the Board of Tax Appeals have the effect of foreclosing the reopening of any question relating to the entire tax liability for the year in question through a suit for refund in the district court. The purpose, of course, was to bring the process of litigation with respect to a given year's taxes to a conclusion with the final decision of the tax court when the taxpayer elects to go that route.
 
 
 17
 Elbert v. Johnson, supra, also involved facts which would have permitted the plaintiff there to bring his action in the district court if the position taken by the appellees here were sound. There, too, the circumstances giving rise to the claimed right to recover back a gift tax paid were developed after and as a result of a decision of the tax court in a case involving the claimed right of the taxpayer to make deductions from gross income on account of interest which she had paid to a trust which she had created by transfers to herself and her husband, as trustees, of sums to be held in trust for the benefit of her ten year old daughter. The tax court held that the creation of the trust was not a real transfer for income tax purposes; and that the claimed deductions of interest payments made by the taxpayer to the trustees on account of loans purportedly made by the trust to her must be disallowed. (Three days after she transferred $300,000 to the trustees they returned to her $298,000 as a "loan". The interest involved was on this loan.)
 
 
 18
 When the trust was created the taxpayer paid a federal gift tax on the transfer. After the tax court had disallowed the interest deduction the taxpayer asserted in that court the right to recoup the gift tax paid on the ground that it had been mistakenly paid. The tax court held it had no jurisdiction to allow the recoupment. The taxpayer then paid the deficiency as determined and sought to recover in the district court on a claim for refund of the gift tax paid. It was held that the district court lacked jurisdiction to entertain the complaint by reason of the provisions of § 322(c). It was stated that none of the exceptions to the section was applicable in that case. The purpose of the section, the court said, was to achieve finality in the determinations of the tax court. The taxpayer could pay the amount of the deficiency and sue to recover but if he chose to go to the tax court before he paid he could not resort to the district court. 164 F.2d at page 424: "Hence it is immaterial that the issue sought to be litigated in the District Court was not presented to the Tax Court, or could not have been presented because based on subsequent events. As this court recognized in Merrill v. United States, 2 Cir., 152 F.2d 74, at page 75, section 322(c) is not based on doctrines of res judicata but is in effect a statute of limitations. There is no provision that the statute shall be tolled, if the Tax Court lacks jurisdiction to determine all the issues presented to it. To read in such a provision by construction would, we think, amount to non-permissible judicial legislation."
 
 
 19
 It is true that neither in Moir v. United States, supra, nor in Elbert v. Johnson, supra, was there any discussion of the meaning of the language in exception (2). The Moir case, however, made specific reference to it, and obviously it did not occur to the court that it operated to give the district court authority to entertain the action to recover an overpayment. In the Elbert case after quoting the main provisions of § 322(c), the court said there were exceptions "not presently applicable."
 
 
 20
 It seems to us that the circumstance which is common in our case and in the Moir and Elbert cases, namely, the overpayment which becomes demonstrable only after and in consequence of the tax court's decision, is fairly typical, and that this situation would arise in many tax cases, and that Congress must have contemplated that such would frequently be the case. We cannot believe that exception (2) was intended to apply in such cases, and thus serve in a substantial degree to make § 322(c) inoperative.[1] We hold in accord with the Moir and Elbert cases that § 322(c) prohibits the district court from entertaining the action.
 
 
 21
 Since we have thus concluded that the precise language of the section prohibits the action, we find it unnecessary to consider the appellant's alternate contention that the suits are barred by the doctrine of res judicata.[2]
 
 
 22
 The judgments are reversed and the causes remanded with directions to enter judgments for the defendant-appellant.
 
 
 
 Notes:
 
 
 [1]
 It is fair to assume that the Moir and Elbert cases must have been known to the revisers of the Revenue Code in 1954; and it is not without interest to note that the provisions of § 322(c) were carried forward without change as § 6512(a) in the 1954 Code, 26 U.S.C.A
 
 
 [2]
 This point is discussed at considerable length in the briefs of both sides. Thus the Government, citing Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597-598, 68 S.Ct. 715, 719, 92 L. Ed. 898, quotes from that case, as applicable here, the statement, "Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year."
 Appellees respond that the particular overpayments here involved could not have been present and adjudicated in the tax court's proceeding and hence the matter become res judicata. Further, they say, since the question was not present or in fact adjudicated in the tax court, appellees were not barred by collateral estoppel. The Government responds to this that there is no reason why the taxpayers could not have raised the present issue in the prior proceedings before the tax court as an alternative argument to the effect that if the court should hold against the taxpayers on the issue of whether the transfers of merchandise were capital contributions and not sales, then the taxes paid on the profits from the sales were erroneously paid and should be credited against the presently claimed deficiency.
 The Government also asserts that since the tax court, following its usual practice withheld entry of its final order pursuant to its Rule 50, for the purpose of permitting the parties to submit computations of proper tax liability, that these appellees had the opportunity in submitting computations under that Rule, to present for determination the present claim of overpayment.
 Appellees argue that by its own terms Rule 50 prohibits consideration of new issues under the computation procedure and that the Rule afforded no opportunity for consideration of these overpayments by the tax court.
 As indicated, the ground of our decision is such that we find it unnecessary to consider the points mentioned in this footnote.