**Julius GUTERMAN and Kate Guterman,**
Plaintiffs,

v.

**Thomas E. SCANLON, District Director**
**of Internal Revenue, Brooklyn,**
**New York**

and

**United States of America,**
**Defendants.**

**Joseph MASCIOLI and Rose Mascioli,**
Plaintiffs,

v.

**Thomas E. SCANLON, District Director**
**of Internal Revenue, Brooklyn,**
**New York**

and

**United States of America,**
**Defendants.**

**GREAT NECK OAKS NO. 3 CORP.,**
Plaintiff,

v.

**Thomas E. SCANLON, District Director**
**of Internal Revenue, Brooklyn,**
**New York**

and

**United States of America,**
**Defendants.**

**Samuel GUTERMAN and Florence**
Guterman, Plaintiffs,

v.

**Thomas E. SCANLON, District Director**
**of Internal Revenue, Brooklyn,**
**New York**

and

**United States of America,**
**Defendants.**

**GREAT NECK OAKS NO. 2 CORP.,**
Plaintiff,

v.

**Thomas E. SCANLON, District Director**
**of Internal Revenue, Brooklyn,**
**New York**

and

**United States of America,**
**Defendants.**

Nos. 63-C-592—63-C-596.

United States District Court
E. D. New York.

Oct. 24, 1963.

**1008**

Robert Cheikes, Great Neck, N. Y., for plaintiffs.

Joseph P. Hoey, U. S. Atty., E. D. New York, for defendants; Herman Wilson, Atty. Dept. of Justice, Washington, D. C., of counsel.

ZAVATT, Chief Judge.

These five actions are brought under 28 U.S.C. §§ 1340, 1346(a) (1) against Thomas E. Scanlon as District Director of Internal Revenue and the United States of America. Plaintiffs allege in their several complaints that deficiencies paid in the cases 63–C–592, 63–C–593, 63–C–595 and 63–C–596 for the tax year 1951, and in 63–C–594 for the tax year 1950, were wrongfully assessed; that claims for refunds of such taxes in cases 63–C–593, 63–C–594 and 63–C–596, and of taxes and penalties in cases 63–C–592 and 63–C–595 were properly made on November 4, 1960 and that defendant, Thomas E. Scanlon, erroneously disallowed such claims. The cases are now before this Court on a motion by defendants to: (1) consolidate the several cases pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (2) to dismiss the cases so consolidated pursuant to Rule 12(b) (1); or, in the alternative, (3) to grant judgment on the pleadings to defendants pursuant to Rule 12(c); and/or (4) to grant defendants such other and further relief as is just and proper.

At the outset, this Court grants defendants' motion to consolidate these five cases pursuant to Rule 42(a). Since these cases each contain virtually identical facts and raise the same questions of law, they are best considered together. The pertinent facts are undisputed. The corporate plaintiffs had received mortgage premiums on Federal Housing Administration guaranteed mortgage loans made by Great Neck Oaks No. 3 Corp. in 1950 and by Great Neck Oaks No. 2 Corp. in 1951. In their respective returns the corporate plaintiffs amortized these premiums over the full terms of the mortgage notes. Thereafter, the Commissioner of Internal Revenue determined a deficiency based in large measure upon this amortization and notified the corporate plaintiffs of an adjustment which included the entire amount of the mortgage premiums as income for the taxable year in which they were received. This had the effect of creating an earnings and profit for tax purposes which would otherwise not have existed. As a result thereof, cash distributions which the individual plaintiffs received from the corporate plaintiffs in 1951 were converted from returns of capital to ordinary dividends.

The five plaintiffs promptly filed petitions with the Tax Court for a redetermination of the proposed deficiencies. While these cases were pending, in fact, before they had even been placed on the calendar for hearing, an unrelated, but factually identical case was decided by the Tax Court adversely to the taxpayer. In substance, this case held that such a mortgage premium could not be amortized over the period of the note; that the entire sum so received was to be regarded as income for the year in which it was received. See Bayshore Gardens, Inc., 30 T.C. 1292 (1958). Shortly thereafter, on November 10, 1958, the plaintiffs herein each entered into separate stipulations of agreed deficiency with the Commissioner, on the basis of which the Tax Court rendered its "DECISION" in each of the five cases on November 14, 1958, one of which (representative of all five) provided as follows:

"DECISION

Pursuant to written stipulation signed by counsel for the parties in

the above-entitled case and filed with the Court on Nov. 10, 1958 at New York, N. Y., it is

ORDERED and DECIDED: That there is a deficiency in income tax and additions to tax under Sections 294(d) (2) and 294(d) (1) (A), IRC 1939, due for the taxable year 1951 in the respective amounts of $3,794.76, $263.33 and $394.99."

The deficiencies determined by the Tax Court in all five cases aggregated $33,354.27, which the plaintiffs paid in December of 1958. Plaintiffs contend, and this Court has no reason to believe otherwise, that their reliance upon the Tax Court decision in Bayshore Gardens, supra, was the sole reason for their decision to cease the litigation they had commenced in that Court and pay the said deficiencies. Subsequent events, however, proved that plaintiffs had acted hastily; the Second Circuit reversed the Bayshore Gardens determination, finding that such premiums could be amortized over the full period of the mortgage note. See 267 F.2d 55 (2d Cir. 1959). The Internal Revenue Service acquiesced in this decision, later amending the Regulations to conform thereto. See 28 Fed. Reg. 5154. On November 4, 1960 the plaintiffs filed claims with the defendant, Thomas E. Scanlon, for refund of the deficiencies paid, alleging that the stipulations were predicated on a mistake of law. On May 17, 1961 these claims were disallowed. Two years later, on May 15, 1963, plaintiffs initiated the present actions in this Court.

Both parties seem to agree that were it not for the prior dispositions of the Tax Court concerning the plaintiffs' tax liability for the year 1951 (1950 in the case of Great Neck Oaks No. 3 Corp.), the present suits would be well founded. The government contends, however, that notwithstanding the merit of plaintiffs' claim under the present regulations and law, they are now precluded by Section 6512(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 6512(a), from seeking a refund in this Court. This statute, virtually identical to all its predecessors down through the 1926 Code, provides:

"§ 6512. Limitations in case of petition to Tax Court

(a) Effect of petition to Tax Court.—If the Secretary or his delegate has mailed to the taxpayer a notice of deficiency under section 6212(a) (relating to deficiencies of income, estate, and gift taxes) and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), no credit or refund of income tax for the same taxable year, of gift tax for the same calendar year, or of estate tax in respect of the taxable estate of the same decedent, in respect of which the Secretary or his delegate has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except—

\* \* \* \* \* \*

(2) As to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final;
\* \* \*.

Although there are two other exceptions to this statute, they are clearly inapplicable to the instant case. Whether or not exception (2) is pertinent shall be considered infra; however, at this point it seems clear that the facts in this case come within the explicit language of the statute. Taxpayers herein have received a notice of deficiency, petitioned the Tax Court for a redetermination thereof, and paid the deficiencies pursuant to a final determination of that Court. There is no contention that the petition submitted to the Tax Court was improperly executed, so that the plaintiffs could contend that no proper petition had been filed in the Tax Court and that this Court could entertain these suits as was the case in Century Transit Co. v. United States, 99 F.Supp. 692 (D.C.N.J.1951); Cutting v. United States, 26 F.Supp. 586 (E.D.N.Y.1939). Once the Tax Court

has been properly petitioned the Courts have uniformly denied resort to the District Courts to enforce a refund claimed for the same tax year.

While it is true that the present case is, on its facts, distinguishable from any case which has arisen under § 6512(a) or its predecessors, the uniform body of appellate level law surrounding this statute appears to preclude a variant decision based upon a unique set of facts. A brief examination of the leading cases in this area, and the distinct fact patterns in each, lends support to this conclusion.

Elbert v. Johnson, 164 F.2d 421 (2d Cir. 1947) offers the most complete Second Circuit discussion of this statute. In that case the taxpayer had executed a trust in 1935 and had paid an $18,600 gift tax thereon in 1936. In 1938 she claimed deductions of interest payments made to the trustees on a loan purportedly made to her by the trustees. In 1941 the Tax Court held that the trust was not a real gift for tax purposes. No appeal was taken from this decision and no claim for refund of the 1936 gift tax could be made due to the statute of limitations. However, when the Commissioner disallowed the deduction of interest payments in the 1938 return, taxpayer petitioned the Tax Court alleging that the erroneously paid gift tax should have been allowed by way of recoupment as a credit against the alleged deficiency arising from denial of the claimed interest payment. The Tax Court held that it lacked jurisdiction to allow the recoupment; the taxpayer paid the 1938 deficiency and filed a claim for refund of $18,600 thereof. The Commissioner neither allowed nor rejected this claim and the taxpayer subsequently brought suit in the district court. The district court dismissed for lack of jurisdiction under § 322(c) of the Internal Revenue Code of 1939, a virtually identical predecessor of the present statute, on the ground that the Tax Court had determined the liability for 1938 when it concluded that it lacked jurisdiction to allow the recoupment. The Court of Appeals assumed

that if the taxpayers had paid their 1938 tax without resorting to the Tax Court they could have established their right to recoupment.

"But they did not do that. They resorted to the Tax Court before they brought the present action. This brought section 322(c) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 322(c), into play." 164 F.2d at 423.

Having found section 322(c) to be applicable, the Court concluded that, even though the Tax Court held that it lacked jurisdiction to allow the mistakenly paid gift tax as a credit, the statute now precluded resort to the district court.

(The legislative) purpose (of 322(c)) was to achieve finality in the determination by the Board of Tax Appeals (now the Tax Court) of the taxpayer's liability for the year in suit. When notified of a deficiency, the taxpayer may litigate its legality either by appealing to the Tax Court before he pays, or by paying and thereafter bringing an action against the United States or the collector to recover any overpayment. *But choice of the first alternative precludes resort to the second. It is not the decision which the Tax Court makes but the fact that the taxpayer has resorted to that court which ends his opportunity to litigate in the District Court his tax liability for the year in question.* * * * Hence it is immaterial that the issue sought to be litigated in the District Court was not presented to the Tax Court, or could not have been presented because based on subsequent events." 164 F.2d at 423–424 (emphasis added).

In reaching this determination, the Court relied on Moir v. United States, 149 F.2d 455 (1st Cir. 1945), a case involving a quite dissimilar set of facts. These facts are concisely set forth by Judge Magruder, speaking for the Court:

"An executor petitions the Tax Court for redetermination of a large

deficiency in estate taxes claimed by the Commissioner. The Tax Court decides in petitioner's favor. Three months later, the Tax Court's decision becomes final, putting petitioner's victory beyond the possibility of upset on further review. The counsel for the executor presents his bill, the amount of which depended upon the ultimate outcome of the litigation and upon how high up the case had to be fought. The executor pays the bill—a proper expense of administration, deductible from the gross estate. But it is too late to reopen the Tax Court proceedings to make the corresponding further adjustment in the estate tax, notwithstanding the fact that an overpayment of estate tax is demonstrable by a recomputation of the tax after taking into account the aforesaid additional deduction from the gross estate. Is the executor also barred, either by Section 319(a) (a predecessor of the statute under consideration in the instant case) * * * or by the general principles of res judicata, from filing with the Collector a claim for refund of the overpayment and, if such claim is disallowed by the Commissioner, from maintaining suit in the federal district court for recovery of the amount of such overpayment?" 149 F.2d at 456.

In answering this question in the affirmative, the First Circuit concluded that "[t]he language of Section 319(a) is very explicit," 149 F.2d at 458 and that "under Section 319(a), it is the filing of a petition in the Tax Court, rather than the decision of the Tax Court, which operates to deprive district courts of jurisdiction to entertain a subsequent suit for refund." 149 F.2d at 460.

United States v. Wolf, 238 F.2d 447 (9th Cir. 1956) is another example of the strict construction placed upon the statute under consideration. There several cases, consolidated for trial, involved the tax liability of a partnership which had delivered $202,000 worth of goods to a corporation which failed before the account receivable was paid. This loss was written off as a bad debt but was disallowed by the Commissioner, along with the corresponding deductions on the individual returns of the partnership members, on the ground that a bona fide partnership did not exist. The Tax Court upheld the validity of the partnership but affirmed the disallowance on the ground that the delivery of goods to the corporation was not a sale but a capital contribution. This decision was affirmed by the Court of Appeals and the taxpayers paid the deficiencies pursuant to the judgment of the Tax Court. They then brought suit in the district court seeking a refund. The plaintiffs contended that, since the Tax Court had found that there was no sale, the taxes paid for the same year in question, based in part upon a profit from that non-existent sale, were excessive. The government stipulated that there had in fact been an overpayment but interposed the precise argument set forth by the defendants herein, i. e., that section 322(c), or, in the alternative, res judicata, precluded resort to the district court. The Ninth Circuit accepted this argument, declaring that:

"It is plain that § 322(c) was intended to have a broad general application so as to provide that if the taxpayer files a petition with the tax court, the mere filing of the petition operates to deprive the district court of jurisdiction to entertain a subsequent suit for refund." 238 F.2d at 449.

See also, Monjar v. Higgins, 132 F.2d 990 (2d Cir. 1943); Rubel Corp. v. Rasquin, 132 F.2d 640 (2d Cir. 1943), affirming, 43 F.Supp. 111 (E.D.N.Y.1942); Brooks v. Driscoll, 114 F.2d 426 (3d Cir. 1940); Worm v. Harrison, 98 F.2d 977 (7th Cir. 1938); Warren Mfg. Co. v. Tait, 60 F.2d 982 (D.C.Md.1932); Green v. MacLaughlin, 55 F.2d 423 (D.C.E.D. Pa.1931); Bankers' Reserve Life Co. v. United States, 44 F.2d 1000, 71 Ct.Cl. 279 (1930), cert. denied, 283 U.S. 836, 51 S.Ct. 485, 75 L.Ed. 1448 (1931);

Bindley v. Heiner, 38 F.2d 489 (D.C.W.D. Pa.1930); James v. United States, 38 F.2d 140, 143, 69 Ct.Cl. 215, cert. denied, 282 U.S. 856, 51 S.Ct. 32, 75 L.Ed. 758 (1930).

Plaintiffs contend that the construction placed on § 322(c) by the Second Circuit in Elbert v. Johnson, supra, "unnecessarily extends and hardens the legislative purpose" thereof. (Plaintiffs' Brief at 11). The propriety of the decision in the Elbert case appears evident from an examination of the legislative history of the statute. In reporting on Section 284(d) of the Revenue Act of 1926, the earliest predecessor of the instant statute, the Senate Committee on Finance declared that:

"[T]he taxpayer's right to claim and sue for refund shall be barred only if he takes the case to the Board (now the Tax Court), thus preserving to him the option of paying the tax and then proceeding before the Department and the courts to recover any excess payments by a claim or suit for refund.

"But if he does elect to file a petition with the Board his entire tax liability for the year in question (except in case of fraud) is finally and completely settled by the decision of the Board when it has become final, whether the decision is by findings of fact and opinion, or by dismissal, as in case of lack of prosecution, insufficiency of evidence to sustain the petition, *or on the taxpayer's own .motion.* The duty of the Commissioner to assess the deficiency thus determined is mandatory, and no matter how meritorious a claim for abatement of the assessment or for refund he can not entertain it, *nor can suit be maintained against the United States or the collector. Finality is the end sought to be attained by these provisions of the bill, and the committee is convinced that to allow the reopening of the question of the tax for the year involved either by the taxpayer or by the Commissioner* (save in the sole case of fraud) *would be highly undesirable.*" S.Rep. No. 52, 69th Cong., 1st Sess., pp. 25–26. (Emphasis added).

See also, James v. United States, supra, 38 F.2d at 142.

Plaintiffs' argument that § 6512(a) is inapplicable is based on the proposition that the decision of the Tax Court was, in effect, a voluntary discontinuance without prejudice to a subsequent suit. Whatever the common law may be as to this question, plaintiffs' contention is clearly refuted by Warren Mfg. Co. v. Tait, supra. In that case the taxpayer, having petitioned the Tax Court, moved to dismiss the case before any action was taken thereon. The government acquiesced and the motion was granted. Taxpayer then paid the deficiency and subsequently brought suit in a district court to recover it. After examining the legislative history of § 284(d), the district court dismissed the suit for lack of jurisdiction, finding that the resort to the Tax Court, even though voluntarily terminated by the taxpayer, precluded further litigation. Cf. Champion Rivet Co. v. United States, 30 F.Supp. 234, 90 Ct.Cl. 70 (1939). If the mere granting of taxpayer's own motion to dismiss is enough to preclude further resort to the district courts, then certainly a Tax Court disposition such as that in the instant case, where it is "ordered and decided that there is a deficiency," should be afforded no lesser degree of finality.

Plaintiffs further contend that even if § 6512(a) be applicable, the present suit may be maintained due to subdivision (2) thereof which permits further litigation "[a]s to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final." The gist of this argument is that the disposition by the Tax Court, entered pursuant to a stipulation of agreed deficiency, is not a "decision" and hence all taxes paid by the plaintiffs pursuant to that disposition are in excess of an amount computed by a final decision of the Tax Court. Such a contention is untenable. It implies, as

the defendant points out, "that any disposition of a petition by the Tax Court other than by formal findings of fact or opinion is an exercise in futility." (Defendants' Reply Brief at 6). The position taken by plaintiffs is clearly contrary to the determination by this Circuit that "[i]t is not the decision which the Tax Court makes but the fact that the taxpayer has resorted to that court which ends his opportunity to litigate in the District Court." Elbert v. Johnson, supra, 164 F.2d at 424. We have seen that the pronounced legislative purpose of this statute was to make the decision of the Tax Court final, no matter how that decision comes about. See Senate Committee on Finance Report, supra. To allow plaintiffs' argument would be, in many cases, to permit the exception to swallow the rule. See United States v. Wolf, supra, 238 F.2d at 451. It would permit a taxpayer, having petitioned the Tax Court, to discontinue that proceeding whenever he feels that the case is going adversely to him, and then proceed to the District Court. Plaintiffs' position is analogous to that set forth in Rubel Corp. v. Rasquin, supra. In that case the taxpayer contended that an order similar to the one herein was a compromise agreement which was invalid due to the lack of approval required by statute. Although the present case does not involve a compromise agreement, the remarks of the Second Circuit are pertinent:

"They (the payments) were made in accordance with assessments based on decisions of the Tax Court. The fact that those decisions were in turn based on stipulations growing out of a compromise agreement is quite as irrelevant as would be the evidence or the lack of it in support of decisions which had become final." 132 F.2d at 643.

See also, Warren Mfg. Co. v. Tait, supra. This Court finds that the disposition of the Tax Court, was, as it is clearly entitled, a "decision"; and that the payment of a deficiency pursuant thereto, such amount being precisely the amount found owing by that decision, does not bring into play the exception set out in § 6512(a) (2).

Plaintiffs have cited to this Court Brast v. Winding Gulf Colliery Co., 94 F.2d 179 (4th Cir. 1938), which, save in one respect, is on all fours with the instant case. In Brast the court granted the taxpayer the relief which plaintiff asks herein on the basis of general equitable principles. The one respect in which the instant case differs from Brast, however, is that the latter was not rendered under any legislative mandate; it dealt with facts arising before the enactment of § 284(d), the earliest predecessor to the statute under consideration herein. Certainly plaintiffs would not contend that the law remains to this date unchanged although Congress has seen fit to enact what this Court regards as a most explicit statute. Indeed, the taxpayers have ably argued several equitable principles which they would have this Court invoke in order to retain jurisdiction over their claims. Unfortunately, they pale in the face of the clear wording of the statute, the legislative history prior thereto, and the subsequent judicial interpretation thereof.

This Court is not unmindful of the harshness of the decision reached today. The taxpayers in the instant case are being taxed more heavily than those in Bayshore Gardens, supra, and all such taxpayers since the amendment of the Regulations. However, plaintiffs cannot be heard to say that they have been denied their day in court. They had the opportunity to be heard but chose to terminate that hearing. The fact that they did so in reliance upon a Tax Court determination, and, possibly, without knowledge of the disastrous effect of § 6512(a), is without legal consequence. Cf. Bankers' Reserve Life Co. v. United States, supra. As the First Circuit said in Moir v. United States, supra:

"It may be that the strict provisions of Section 319(a) (a predecessor of the present statute), as we have applied them here, do work a hardship on taxpayers in certain situa-

**1014**

tions. * * * But relief from such hardships, if they exist, must come from Congress, by appropriate modification of the section." 149 F.2d at 460.

Accord, Warren Mfg. Co. v. Tait, supra, 60 F.2d at 985. This Court must also note, as did the Court in United States v. Wolf, supra, that Congress, obviously aware of the harsh results sometimes compelled by this statute, "has" seen fit to carry it forward through several revisions with virtually no change.

This Court finds, therefore, that it lacks jurisdiction to hear these cases and orders them dismissed pursuant to Rule 12(b) (1) of the Federal Rules of Civil Procedure. There is no need to consider the defendants' further contention that these cases are barred by the doctrine of res judicata.

Settle an order consistent herewith on or before fifteen (15) days from the date hereof.