CLAREMONT WASTE MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22747.   Filed September 27, 1955.

*Robert Ash, Esq.*, and *Charles H. Burton, Esq.*, for the petitioner.
*George J. LeBlanc, Esq.*, for the respondent.

#### OPINION.

FISHER, *Judge:* Respondent determined a deficiency in petitioner's income tax for 1941 in the amount of $585.26 and an overassessment of excess profits tax for that year in the amount of $1,887.99. Petitioner had filed both (1) a claim for refund of 1941 taxes based on a carry-back of an excess profits tax credit unused in 1942 and (2) an application for relief under section 722 of the Internal Revenue Code of 1939. Respondent's determination denied all of the former and part of the latter. The sole issue now remaining is whether petitioner's claim for refund was timely filed within the provisions of section 322 (b) (6) of the Internal Revenue Code of 1939.

All of the facts were stipulated by the parties. They are found accordingly and incorporated herein by reference.

Petitioner is a New Hampshire corporation with its principal office located at Claremont, New Hampshire. Its returns for the taxable years involved were filed with the then collector of internal revenue at Portsmouth, New Hampshire. The returns were made for calendar years and on an accrual basis.

The petitioner filed excess profits tax returns for the years 1941, 1942, and 1943 on the respective dates, February 27, 1942, March 13, 1943, and February 29, 1944. The excess profits tax shown to be due in the 1941 return, $10,386.29, was paid in four installments during 1942. On September 13, 1943, respondent mailed to petitioner a notice of deficiencies in income and excess profits taxes for 1941. The deficiencies resulted from certain adjustments not here in controversy.

On September 14, 1943, petitioner filed with the respondent an application for excess profits tax relief under section 722 for the year 1941. The application for relief was based principally on the introduction of a new type of machine and an alleged increase in the capacity for production and operation under section 722 (b) (4). No claim was made in the application for any unused excess profits credit carry-back from the year 1942.

On November 4, 1943, petitioner filed a petition in the Tax Court, Docket No. 3361, based on the deficiency notice of September 13, 1943,

contesting the deficiency for 1941. It alleged certain errors not here material, and there was no allegation of error with respect to any carryback of 1942 unused excess profits credit.

After a hearing, the Tax Court, on March 12, 1945, entered a Memorandum Opinion in that case. Thereafter the parties submitted Rule 50 recomputations which were identical with respect to petitioner's income and excess profits tax liabilities for 1941, and on April 27, 1945, the Tax Court entered a decision in accordance therewith for an overpayment in income tax for that year of $41, and a deficiency in excess profits tax of $819.78. The deficiency of $819.78, plus interest of $178.67, was paid or satisfied as follows: $795.41 paid April 15, 1946; $41 credited against the 1941 income tax overpayment; and $162.04 credited against income tax overpayment for 1940.

For the year 1942 petitioner had an unused excess profits credit of $38,652.83 which it carried over, in its entirety, to the year 1943. No effect was given to any carry-back from 1942 to 1941 in either of the Rule 50 recomputations submitted to the Court in Docket No. 3361. Previously, however, a revenue agent had examined petitioner's returns for 1941 and 1942 and a copy of his report dated February 14, 1944, had been transmitted to petitioner on July 17, 1944. In computing petitioner's excess profits tax liability for 1941, the agent gave effect to a carry-back from 1942 of the unused excess profits credit of $38,652.83.

On February 3, 1945, the respondent executed an agreement, previously executed by the petitioner, extending the statute of limitations for 1941 to June 30, 1946. Thereafter similar agreements were executed extending the statute to June 30, 1949.

On March 3, 1947, petitioner filed a claim for refund for the entire amount of excess profits tax paid for 1941 based on the carry-back of the $38,652.83 (adjusted to $38,524.63 on the basis of holdings in the Tax Court Opinion, *supra*) of unused excess profits credit for 1942. Thereafter, on January 31, 1949, respondent sent the petitioner a statutory notice (on which the instant proceeding is based) of an overassessment of $1,887.99 in excess profits tax for 1941. In this notice respondent allowed in part petitioner's claim for relief under section 722 filed September 14, 1943, insofar as it related to the use of constructive average base period net income of $85,756.36, but disallowed a carry-back of unused excess profits credit from 1942.

Petitioner filed the petition herein on April 27, 1949, alleging that the respondent erred (1) in disallowing in part petitioner's claim for refund under section 722, and (2) in failing to carry back to 1941 the unused excess profits credit arising in 1942. Subsequently, the respondent filed a motion to dismiss the proceedings for lack of jurisdiction insofar as it related to the carry-back issue. After a hearing on the motion, this Court on February 19, 1951, issued an order granting

respondent's motion upon the authority of *Mutual Lumber Co.*, 16 T. C. 370 (1951).

Petitioner appealed the Tax Court's order to the United States Court of Appeals for the First Circuit, and on May 7, 1952, that court, upon consideration of respondent's confession of error, vacated the Tax Court's order and remanded the case for further proceedings. In this respect, see *City Machine & Tool Co.* v. *Commissioner*, (C. A. 6, 1952) 194 F. 2d 535, and *City Machine & Tool Co.*, 21 T. C. 937, 948 (1954).

Thereafter, at the hearing held herein, petitioner waived the allegation of error with respect to the 722 claim, and submitted the remaining issue, pertaining to the carry-back of the 1942 unused excess profits credit. Respondent now contends that petitioner's claim for refund based on the carry-back was not timely filed within the requirements of section 322 (b) (6) of the Internal Revenue Code of 1939. (He had previously amended his answer to so allege.) Since the parties now agree that petitioner is entitled to a refund in the amount of $1,887.99 as a result of respondent's allowance under the provisions of section 722, the question of the carry-back is the only issue which remains for disposition.

At the outset it should be noted that petitioner's income tax and excess profits tax liabilities for 1941 were once litigated before this Court and a decision in that case was entered on April 27, 1945. This decision subsequently became final and, in the absence of certain exceptions not here material, unless the provisions of section 322 (g) are held to apply, petitioner is barred from any further relief by the provisions of section 322 (c) providing for the finality of Tax Court decisions insofar as credits and refunds are concerned. See *Elbert* v. *Johnson*, (C. A. 2, 1947) 164 F. 2d 421; *Moir* v. *United States*, (C. A. 1, 1945) 149 F. 2d 455; and *Bear Mill Mfg. Co.* v. *United States*, (S. D., N. Y., 1950) 93 F. Supp. 988. Section 322 (g) provides an exception to section 322 (c) with respect to overpayments attributable to certain carry-backs. Section 322 (g) provides as follows:

(g) OVERPAYMENTS ATTRIBUTABLE TO NET OPERATING LOSS CARRY-BACKS AND UNUSED EXCESS PROFITS CREDIT CARRY-BACKS.—If the allowance of a credit or refund of an overpayment of tax attributable to a net operating loss carry-back or to an unused excess profits credit carry-back is otherwise prevented by the operation of any law or rule of law other than section 3761, relating to compromises, such credit or refund may be allowed or made, if claim therefor is filed within the period provided in subsection (b) (6). If the allowance of an application, credit or refund of a decrease in tax determined under section 3780 (b) is otherwise prevented by the operation of any law or rule of law other than section 3761, such application, credit or refund may be allowed or made if application for a tentative carry-back adjustment is made within the period provided in section 3780 (a). In the case of any such claim for credit or refund or any such application for a tentative carrying-back adjustment, the

determination by any court, including The Tax Court of the United States, in any proceeding in which the decision of the court has become final, shall be conclusive except with respect to the net operating loss deduction and the unused excess profits credit adjustment, and the effect of such deduction or adjustment, to the extent that such deduction or adjustment is affected by a carry-back which was not in issue in such proceeding.

Subsection (g) was added to the Code by the Tax Adjustment Act of 1945, and by section 5 (f) of the Act it was made effective with respect to all taxable years beginning after December 31, 1940, with certain exceptions not applicable here. It was one of a number of provisions added to the Code by that Act and the Revenue Act of 1945 in order to provide for equitable and adequate operation of provisions relating to carry-back adjustments. In this respect, House Report No. 849, 79th Congress, reported in 1945 C. B. 566, at page 587, states in part as follows:

In further recognition of the fact that the events which result in a net operating loss carry-back or an unused excess profits credit carry-back may not occur until a number of years after the close of the taxable year of the *overpayment*, subsection (d) of section 5 of the bill adds a new subsection (g) to section 322 of the Code. Subsection (g) in effect provides that a credit or refund of an overpayment of tax attributable to a net operating loss carry-back or to an unused excess profits credit carry-back may be allowed or made if claim therefor is filed within the period prescribed in section 322 (b) (6) for the filing of such a claim, without regard to whether any law or rule of law (other than section 3761 of the Code, relating to compromises) would otherwise, but for the provisions of such subsection (g), bar such credit or refund. * * * Section 322 (c) of the Code in effect provides that where a taxpayer has filed a petition with The Tax Court for a redetermination of a tax for a taxable year, no credit or refund of an overpayment of such tax for such year, except as determined by The Tax Court and with certain other limited exceptions, may be allowed or made. However, under the proposed subsection (g) of section 322 of the Code, even though the tax liability for a given taxable year, for example, has already been litigated before The Tax Court, credit or refund of an overpayment attributable to a carry-back may be allowed or made, if claim for credit or refund is filed *within the period prescribed in section 322 (b) (6),* * * * [Emphasis supplied.]

It is our view, for the reasons hereinafter set forth, that petitioner's claim for refund attributable to the carry-back was not "filed within the period provided in section 322 (b) (6)," and that therefore section 322 (g) is not here applicable to remove the bar to the allowance of the carry-back credit in the instant case.

Section 322 (b) (6) was first added to the Code, like section 322 (g), by the Tax Adjustment Act of 1945. In order to coordinate that section with provisions for the repeal of the excess profits tax, the first sentence of section 322 (b) (6) was amended by section 122 (e) (1) of the Revenue Act of 1945. See S. Rept. No. 655, 79th Cong., 1st Sess., reported in 1945 C. B. 621, 645. As amended, section 322 (b) (6) provides in part as follows:

(6) SPECIAL PERIOD OF LIMITATION WITH RESPECT TO NET OPERATING LOSS CARRY-BACKS AND UNUSED EXCESS PROFITS CREDIT CARRY-BACKS.—If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period of limitation prescribed in paragraph (1), the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back, or the period prescribed in paragraph (3) in respect of such taxable year, whichever expires later. * * *

This provision, as amended, was also made applicable to claims for credit or refund with respect to taxable years beginning after December 31, 1940. See section 5 (f) of the Tax Adjustment Act of 1945 and section 122 (e) (2) of the Revenue Act of 1945. The purpose of section 322 (b) (6) was, in general, to provide a special period of limitations for claims based on credit carry-backs since the extent or existence of unused credits might often be unknown to the taxpayer until after the normal period of limitations for such claims had expired. In this respect, see House Report No. 849, *supra*, which states in part as follows (1945 C. B. 566, 586) :[1]

Subsection (b) of section 5 adds a new paragraph (6) at the end of section 322 (b) of the Code to provide that in the case of an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the normal 3-year period of limitation, there shall apply whichever of the following two periods expires later :

(1) The 3-year period provided in section 322 (b) (1) for the filing of a claim for credit or refund, or the allowance of a credit or refund *with respect to the year of the net operating loss or the unused excess profits credit;*

(2) The period within which claim for credit or refund may be allowed or made, or claim for credit or refund filed, *with respect to the year of net operating loss or the unused excess profits credit* if such period is extended pursuant to the provisions of section 322 (b) (3) of the Code as a result of the execution of an agreement extending the time within which the Commissioner may make an assessment with respect to *such* year. [Emphasis supplied.]

It is apparent from the legislative history of section 322 (b) (6) that Congress intended the special period of limitation to be measured from the year in which the credit is unused as distinguished from the year of overpayment which results from the carry-back. We believe that the express language of the section clearly so provides. The section also provides that the special period of limitations is to be in lieu of the 3-year period provided in section 322 (b) (1) which is measured from the date of the filing of the return for the year of overpayment.

The Congressional intent in this respect is further illustrated by the provisions relating to the assessment of deficiencies attributable to the application of credit carry-backs. Section 5 (e) of the Tax Adjust-

[1] Paragraph number (1) in the quotation refers to section 322 (b) (6) prior to its amendment by section 122 (e) (1) of the Revenue Act of 1945.

ment Act of 1945 added section 276 (d) to the Code which provides that such deficiencies may be assessed at any time prior to the expiration of the period within which a deficiency may be assessed with respect to the taxable year of the unused credit resulting in such carry-back. The legislative intent in this respect is expressed as follows in House Report No. 849, *supra* (1945 C. B. 566, 588):

Thus, as in the case of credits or refunds, the period for making assessments is made coextensive with the period within which assessments may be made with respect to the taxable year of the claimed loss or unused excess profits credit. In the usual case, such period will be three years from the date the return for the taxable year of the claimed loss or unused excess profits credit was filed, but if the period within which a deficiency may be assessed with respect to such year is longer than such three years (due, e. g., to the execution of an agreement extending such period, or to the filing of a fraudulent return, or to the substantial understatement of gross income), the period within which a deficiency with respect to a prior taxable year attributable to a carry-back from the year of the claimed loss or unused excess profits credit will be correspondingly longer. * * * Any deficiency attributable to a carry-back resulting from such loss or unused excess profits credit may be asserted at any time prior to the expiration of the period within which a deficiency may be assessed with respect to the taxable year of the claimed or actual net operating loss or unused excess profits credit.

Thus, for both the taxpayer and the Commissioner the timeliness of actions to claim refunds or to assess taxes arising from the application of a carry-back is determined by the year of the unused credit, not the year of overpayment. Therefore, unless it was filed within the special period measured with respect to 1942 as required by section 322 (b) (6), petitioner's claim for refund herein based on the carry-back of an excess profits tax credit unused in 1942 is barred by the provisions of section 322 (c) since it would not be within the exception to that bar provided in section 322 (g).

Petitioner's claim for refund was filed on March 3, 1947. This date is clearly beyond the fifteenth day of the thirty-ninth month following December 31, 1942, within the meaning of the first alternative period provided in section 322 (b) (6) above. The second alternative of that section is "the period prescribed in [section 322 (b) (3)] in respect of such taxable year." Section 322 (b) (3) provides in effect that, if the parties have executed a waiver to extend the time for assessment, a claim for refund for that year may be filed within the waiver period and 6 months thereafter. The parties have stipulated, however, that no waivers were executed for 1942, the year in which the credit was unused. Accordingly, it is clear that petitioner's claim is not timely within the second alternative period provided in section 322 (b) (6). Since the claim was not timely filed within the period provided in section 322 (b) (6) as required by section 322 (g), our decision in the prior proceeding is final and the question of whether or not the carry-back was in issue is not here material.

Petitioner, in a supplemental memorandum, relies upon *Byron Weston Co.* v. *United States*, (Ct. Cl., 1950) 87 F. Supp. 955. It is our view, after careful examination of the Opinion in that case, that it is not here applicable and contains nothing inconsistent with our views as expressed above.

Petitioner contends that the claim was timely on the theory that it was filed within the period of waivers executed by the parties to extend the period of limitations for assessment of 1941 taxes, such waivers being reciprocal under section 322 (b) (3) which is incorporated in section 322 (b) (6). Respondent, on the other hand, argues that section 322 (b) (3) (which was enacted by section 169 (a) of the Revenue Act of 1942 and subsequently made effective under certain specified circumstances for prior taxable years by section 509 (a) of the Revenue Act of 1943) is not effective under the circumstances here present with respect to 1941.[2] In view of our analysis of the instant case, it is unnecessary for us to decide this issue. It is our view that the ultimate issue herein is not whether 1941 is barred by limitations but rather whether the instant claim for refund is barred by the provisions of section 322 (c) as a result of the prior 1941 litigation. Since it is our view that our earlier decision is final in the absence of applicability of section 322 (g), consents to the extension of the period of limitations for the taxable year covered by that decision do not serve to remove the bar to the instant claim.

*Decision will be entered under Rule 50.*

---

[2] Section 509 of the Revenue Act of 1943 provides in part as follows:

SEC. 509. RETROACTIVE EFFECT OF SECTION 169 OF THE REVENUE ACT OF 1942.

(a) IN GENERAL.—Section 169 (c) of the Revenue Act of 1942 (relating to the effective date of certain amendments to section 322) is amended by inserting at the end thereof the following: "A provision having the effect of the amendment inserting section 322 (b) (3) of the Internal Revenue Code, and a provision having the effect of the amendment made by subsection (b) of this section, shall be deemed to be included in the revenue laws respectively applicable to taxable years beginning after December 31, 1923, but such amendments shall be effective with respect to taxable years beginning prior to January 1, 1942, only if on or at some time after the date of the enactment of the Revenue Act of 1943 the Commissioner may assess the tax for such taxable year solely by reason of having made (either before, on, or after the date of the enactment of the Revenue Act of 1943) an agreement with the taxpayer pursuant to section 276 (b) of the Internal Revenue Code or the corresponding provision of the applicable prior revenue law to extend beyond the time prescribed in section 275 or the corresponding provision of such prior revenue law the date within which the Commissioner may assess the tax."