WILMINGTON GASOLINE CORPORATION, A CALIFORNIA CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45220.    Filed December 12, 1956.

*John A. Gorfinkel, Esq.,* for the petitioner.
*Aaron S. Resnik, Esq.,* for the respondent.

OPINION.

FISHER, *Judge:* Respondent determined an overassessment of excess profits tax in the amount of $14,174.40 and a deficiency in income tax of $12,450.34 for the fiscal year ended April 30, 1944.

The issue presented is whether petitioner has filed a timely and sufficient claim for unused excess profits credit based upon the use of constructive average base period net income for carryback purposes, so that constructive average base period net income may be employed in computing the amount of unused excess profits credit for its fiscal year ended April 30, 1946, for carryback purposes to its fiscal year ended April 30, 1944. An inherent factor in the problem is whether, assuming the insufficiency for the foregoing purposes of the original claim filed, such insufficiency was cured by waiver on the part of respondent and the filing by petitioner of an amended claim after the date upon which the time for filing an original claim would have expired.

All of the facts are stipulated and are incorporated herein by reference.

The petitioner is a California corporation with its principal office at Los Angeles, California.

Petitioner's fiscal and taxable year ends on April 30 of each calendar year. Petitioner filed with the collector for the sixth district of California an excess profits tax return and an amended excess profits tax return for the year ended April 30, 1944.

Petitioner filed applications on Form 991 for relief under section 722 of the Internal Revenue Code for each taxable year ended April 30, 1941, to April 30, 1945, inclusive. On its application for relief on Form 991 for the year ended April 30, 1941, petitioner stated: "This application is filed in order to support taxpayer's right to unused excess profits credit carry over." On its application for relief on Form 991 for the year ended April 30, 1944 (filed July 11, 1944), petitioner did not refer to any unused excess profits credit carryover or carryback. No application for relief on Form 991 was filed for the year ended April 30, 1946.

In July 1946, petitioner filed a claim for refund on Form 843, the claim stating that it was based on "Carryback of unused excess profits credit for the year ended April 30, 1944. Detailed computation attached." The computation attached was for a carryback of unused excess profits credit based on invested capital from 1946 to 1944. It did not make any reference to a carryback based upon constructive average base period net income under section 722.

In 1948, a refund was allowed for the year ended April 30, 1944 (pursuant to the claim for refund filed in July 1946), and a certificate of overassessment issued. At approximately the same time (the time being immaterial in this proceeding), taxpayer was also notified that, except to the extent previously allowed, said refund claim was disallowed. The certificate of overassessment stated that it was "in accordance with adjustments to your tax liability to which you have agreed." That statement referred to a letter signed by petitioner,

dated April 4, 1947, addressed to the internal revenue agent in charge, transmitting executed waiver Forms 874 and 872 with respect to the fiscal year April 30, 1943. The letter contained the following sentence:

Our agreement to the "standard issues" as determined by the agent's report for the years April 30, 1941 to April 30, 1943 inclusive, is not to be considered an agreement to the rejection of any of our rights under Section 722.

On June 15, 1950, petitioner filed a claim on Form 843 for refund for the year ended April 30, 1944, computed according to a carryback from 1946 of an unused excess profits tax credit based on constructive average base period net income. That claim stated: "This claim is to amend and supplement * * * [the] claim filed in July 1946, to apply to the carry back of unused excess profits credit from the year ended April 30, 1946, based on the excess profits credit allowable for such year computed under the provisions of Code Section 722."

On December 1, 1950, the internal revenue agent in charge mailed to petitioner a report dated October 10, 1950. The letter of transmittal and page 1 of the report are as follows:

*December 1, 1950.*

WILMINGTON GASOLINE COMPANY
555 SOUTH FLOWER STREET
LOS ANGELES, CALIFORNIA

Report dated: 10/10/50
Fiscal Years: 4/30/41 to 4/30/46, inclusive.

GENTLEMEN:

There is enclosed for your information and files a copy of a report covering the examination of your application(s) for relief under Section 722 of the Internal Revenue Code for the year(s) indicated, recently made by a representative of this office. You have indicated your agreement to the constructive average base period net income as shown in the report.

This letter is not a final notice of determination under Section 732 of the Internal Revenue Code. In accordance with established procedure the recommendations contained herein will be certified to the Excess Profits Tax Council for review and approval. If approved, the recomputation of your tax liability which will be furnished you will represent a determination of the amount of your income and excess-profits tax liability for the year(s) under consideration. If not approved, you will be so advised and afforded an opportunity for hearing before the Excess Profits Tax Council.

Your prompt acknowledgement of the receipt of this letter and related papers upon the enclosed form will be appreciated.

Very truly yours,

/s/ George D. Martin
*Internal Revenue Agent in Charge*

Enclosures:
Copy of Sec. 722 Report
Form of receipt

Section 722 Report

PRELIMINARY STATEMENT

Taxpayer: WILMINGTON GASOLINE Co. 555 SOUTH FLOWER LOS ANGELES, CALIFORNIA

Place *Los Angeles, California*
*October 10, 1950*

Application(s) for relief filed by the above-named corporation in accordance with the provisions of section 722 of the Internal Revenue Code have been subjected to field investigation. After careful consideration the following recommendations are made:

SUMMARY

| Year ended | ABPNI | | | | |
| --- | --- | --- | --- | --- | --- |
| | Claim No. | Date claim filed | Used on return or allowed* | CABPNI claimed | CABPNI allowed |
| 4/30/41 | 4755 | 9/7/43 | *$22,251.77 | $72,826.56 | ᵃ $30,170 |
| 4/30/42 | 4756 | 9/7/43 | *21,900.45 | 72,826.56 | 56,707 |
| 4/30/43 | 22769 | 9/3/43 | *24,141.39 | 72,826.56 | 56,707 |
| 4/30/44 | 363b8 | 7/11/44 | *18,426.57 | 72,826.56 | 56,707 |
| 4/30/45 | 42939 | 1/15/46 | *15,527.21 | 72,826.56 | 56,707 |
| 4/30/46 | (ᵃ) | | | | (ᵃ) |

*Where invested capital credit was used on return or allowed give amount and mark with asterisk.

The contents of this report have been discussed in detail with:

Mr. E. V. McKENZIE          Attorney-in-fact

(capacity)

Mr. H. E. ALBER          "     "     "

ᵃ A CABPNI in the amount of $56,707 is computed for fiscal year ended 4/30/46 for carry-back purposes to the extent applicable. A CABPNI in the amount of $30,170 is computed under the 1941 Act for the fiscal year ended 4/30/41, for carry-over purposes to the extent applicable.

EP–35

On October 19, 1950, petitioner signed an agreement on Form EPC–1 consenting and agreeing to the determination of constructive average base period net income in the same amounts and for the same years covered by the report dated October 10, 1950, attached to the letter of the internal revenue agent in charge dated December 1, 1950. The Form EPC–1 likewise contained a statement that constructive average base period net income in the amount of $56,707 was computed for the fiscal year ended April 30, 1946, for carryback purposes to the extent applicable.

The Chairman of the Excess Profits Tax Council addressed the following letter to petitioner's representative:

*Feb 21 1951*

Mr. E. V. McKenzie
220 Bush Street
San Francisco, California

In re: Application(s) for relief under section 722 of the Internal Revenue Code for the year(s) F. Y. 1941, 1942, 1943, 1944, 1945 and 1946.

Dear Mr. McKenzie: In re: Wilmington Gasoline Company, Los Angeles, California.

The Executive Committee of the Excess Profits Tax Council has approved the amount of constructive average base period net income for the taxable year(s) indicated above, as recommended by the Section 722 Field Committee, in the office of the Internal Revenue Agent in Charge at Los Angeles, California, and agreed to by the claimant.

Such determination with respect to the application(s) for relief has been transmitted to the Internal Revenue Agent in Charge, Los Angeles, California, for appropriate action.

Very truly yours,

/s/ Henry J. Merry,
*Chairman, Excess Profits Tax Council*

Petitioner paid its excess profits taxes for the fiscal year ended April 30, 1944, at the time and in the amounts set forth in the schedule attached as Exhibt 16 to the stipulation of facts incorporated herein by reference.

Petitioner's claim for refund of 1944 taxes based on a carryback of unused excess profits tax credit from 1946, computed according to constructive average base period net income, was disallowed by respondent, who determined that it was not filed within the time prescribed by section 322 of the Internal Revenue Code of 1939. The statutory notice disallowing such carryback was mailed on August 11, 1952.

It is clear from the facts (and does not appear to be controverted) that time for filing an original claim for refund for the fiscal year ending April 30, 1944, based upon the carryback of an excess profits tax credit unused in the fiscal year ended April 30, 1946, expired on July 15, 1949. The relevant provisions of the statute are set forth in footnote [1]. See also *Claremont Waste Manufacturing Co.*, 24 T. C. 1087, affd. (C. A. 1) 238 F. 2d 741.

---

[1] SEC. 322. REFUNDS AND CREDITS.

(b) LIMITATION ON ALLOWANCE.—

(1) PERIOD OF LIMITATION.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. * * *

* * * * * * *

(6) SPECIAL PERIOD OF LIMITATION WITH RESPECT TO NET OPERATING LOSS CARRY-BACKS AND UNUSED EXCESS PROFITS CREDIT CARRY-BACKS.—If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period of limitation prescribed in paragraph (1), the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back, or the

Petitioner's claim for relief under section 722 for the year ended April 30, 1944, was filed on July 11, 1944, but contained no claim for carryback of unused credit from fiscal 1946. In July 1946, petitioner filed a claim for refund on Form 843, the claim stating that it was based upon carryback of unused excess profits credit for fiscal 1946. The computation attached to the claim referred to a carryback based on the invested capital credit and not upon a constructive average base period net income determined under section 722.

Whatever may be said at this point for the sufficiency of the claims above referred to as a basis for the relief now claimed by petitioner, it is obvious upon the facts that they were considered as refund claims by respondent (who allowed some relief under each) and that they were timely under the applicable statutes. See *Martin Weiner Corp.*, 26 T. C. 128.

In the light of subsequent events, we think that respondent waived any objection to the sufficiency of the claims above referred to, including the failure to set forth as a basis for relief a carryback to fiscal 1944 of a credit based on constructive average base period net income determined under section 722 for fiscal 1946; and that the amended claim on Form 843 filed on June 15, 1950, is to be taken as an appropriate amendment of the prior claims, warranting the allowance to petitioner of relief for fiscal 1944, based on the carryback of an unused credit for fiscal 1946 based on constructive average base period net income determined under section 722. The significant events in addition to the filing of the claim in 1944 on Form 991, the filing of the claim in 1946 on Form 843, and the filing of the amended claim in 1950 on Form 843, all referred to above, are (a) the action of the internal revenue agent in charge, as described in his letter dated December 1, 1950, and the portion attached thereto of the report dated October 10, 1950, showing that the relief claimed was under active consideration, including a constructive average base period net income computed for fiscal 1946 for carryback purposes; (b) the presentation to petitioner of an agreement on Form EPC–1 (executed by petitioner on October 19, 1950) containing like reference to a constructive average base period net income for fiscal 1946 for carryback purposes; (c) the letter of the Chairman of the Excess Profits Tax Council dated February 21, 1951, indicating approval of its Executive Committee of the constructive average base period net income recommended by the section 722 Field Committee and agreed to by claimant, and stating that such determination had been transmitted to the internal revenue agent in charge for appropriate

period prescribed in paragraph (3) in respect of such taxable year, whichever expires later. In the case of such a claim, the amount of the credit or refund may exceed the portion of the tax paid within the period provided in paragraph (2) or (3), whichever is applicable, to the extent of the amount of the overpayment attributable to such carry-back.

action; and (d) the fact that the statutory notice disallowing the carryback claim was not mailed until August 11, 1952, and was based on the sole ground that the claim "was not filed within the time prescribed by section 322 of the Internal Revenue Code."

In this posture of the facts, we think the authorities reject the application of limitations and support the allowance to petitioner of the carryback of the unused credit for fiscal 1946 to fiscal 1944, based upon constructive average base period net income determined under section 722.

In *Martin Weiner Corp.*, *supra*, we said:

> Where none of the other conditions in sections 322 (b) (1) and (d) (1) (A) of the 1939 Code are satisfied, those sections require that a claim for refund be filed by a taxpayer within 2 years after payment of the tax sought to be refunded. That requirement is a statute of limitations provision which cannot be waived by respondent and which must be complied with if the taxpayer is to recover its refund. However, although a claim for refund may also be denied if it does not conform with the formal requirements contained in respondent's regulations under section 322 (to the effect that such claims shall be made on certain forms and must state the grounds relied upon for refund),[2] those regulatory requirements *can be waived* by respondent. *Tucker* v. *Alexander*, 275 U. S. 228; *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62; *United States* v. *Humble Oil & Refining Co.*, (C. A. 5) 69 F. 2d 214; *United States* v. *Garbutt Oil Co.*, 302 U. S. 528; *United States* v. *Kales*, 314 U. S. 186; *Angelus Milling Co.* v. *Commissioner*, *supra*.
>
> [2] Regulations 111.
>
> SEC. 29.322–3. CLAIMS FOR REFUND BY TAXPAYERS.—Claims by the taxpayer for the refunding of taxes, interest, penalties, and additions to tax erroneously or illegally collected shall be made on Form 843, or on Form 1040 * * * and should be filed with the collector of internal revenue. A separate claim shall be made for each taxable year or period.
>
> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed prior to the expiration of such period. The claim must set forth in detail each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. * * *

In *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, the Supreme Court said (p. 71):

> In the light thus supplied by the practice of the Bureau and the analogy of pleadings, the way is cleared for a conclusion. The line of division must be kept a sharp one between the function of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function of the regulation is to facilitate research. The Commissioner has the remedy in his own hands if the claim as presented is so indefinite as to cause embarrassment to him or to others in his Bureau. He may disallow the claim promptly for a departure from the rule. If, however, he holds it without action until the form has been corrected, and still more clearly if he hears it, and hears it on the merits, what is before him is not a double claim, but a claim single and indivisible, the new indissolubly welded into the structure of the old.

In *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 293, the Court said (p. 297):

> Treasury Regulations are calculated to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims. * * * But

Congress has given the Treasury this rule-making power for self-protection and not for self-imprisonment. If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it. Even tax administration does not as a matter of principle preclude considerations of fairness.

Since, however, the tight net which the Treasury Regulations fashion is for the protection of the revenue, courts should not unduly help disobedient refund claimants to slip through it. The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission.
\* \* \*

We have given careful consideration to the authorities cited by the respondent. We do not think it is necessary to discuss them further than to say that the authorities which we have considered, *supra*, amply support the position which we have taken to the effect that since the original claim was timely filed, and asserted a carryback from fiscal 1946 to fiscal 1944 (albeit on the invested capital basis) and since respondent, by his conduct, waived strict compliance with his own regulations as to the statement of the basis for petitioner's claim, the later amended claim, also asserting a carryback from fiscal 1946 to fiscal 1944 (but based on constructive average base period net income under the provisions of section 722), although filed after the time required by statute for the filing of an original claim, is to be deemed a sufficient amendment to and assimilated to the original claim, thus warranting allowance of carryback of unused credit as claimed. See *Hydraulic Press Manufacturing Co.*, 27 T. C. 278.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*