**BRAD FOOTE GEAR WORKS, INC.**

v.

**UNITED STATES.**

No. 167–59.

United States Court of Claims.

April 7, 1961.

Harold R. Burnstein, Chicago, Ill., for plaintiff. John E. Hughes and John W. Hughes, Chicago, Ill., on the brief.

Jerry M. Hamovit, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. James P. Garland and Philip R. Miller, Washington, D. C., on the brief.

JONES, Chief Judge.

The plaintiff seeks to recover excess profits taxes paid for the fiscal year which ended September 30, 1944. The plaintiff says that in the fiscal year 1946 it suffered a net operating loss which it is entitled to carry back as a deduction against excess profits tax liability paid for the fiscal year 1944. The plaintiff paid an excess profits tax deficiency of $94,644.-59, and interest thereon of $45,499.41, in payments from March through July 1953. The taxpayer filed its claim for refund of these excess profits taxes on August 8, 1953.

In its petition to this court, plaintiff requested refund of both excess profits taxes and income taxes for the fiscal year 1944. The plaintiff has since conceded, however, that it did not file a timely claim for refund of 1944 *income* taxes. In this opinion therefore we address ourselves to the claim for refund of excess profits taxes paid for the fiscal year 1944.

Prior to this suit, plaintiff's tax liability for the fiscal year 1944 has twice been the subject of litigation. In Brad Foote Gear Works, Inc. v. United States, decided with Junior Toy Corp. v. United States, 1953, 116 F.Supp. 730, 126 Ct.Cl. 681, certiorari denied 1954, 348 U.S. 815, 75 S.Ct. 26, 99 L.Ed. 643, this court dismissed taxpayer's petition for a refund of income and excess profits taxes for fiscal years 1944 and 1945. In Brad Foote Gear Works, Inc. v. Commissioner of Internal Revenue, Docket No. 39089, filed February 1952, the plaintiff petitioned the Tax Court of the United States for a redetermination of its excess profits taxes for the taxable years ended September 30, 1942, 1943, 1944, and 1945. That proceeding was concluded by a decision of the Tax Court which was entered on October 18, 1952. The Tax Court denied the petitioner excess profits tax relief for the fiscal years 1942–1945 and found that there was no overpayment in excess profits taxes for those years. The Tax Court determined deficiencies in excess profits taxes for the fiscal years 1943 and

1944. These deficiencies, as we have noted, were paid by the taxpayer from March through July 1953.

The defendant asserts that taxpayer's excess profits tax liability for 1944 was litigated to a final conclusion in the Tax Court proceeding, and that any attempt to sue for a refund of these taxes is barred by § 322(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 322(c).[1] Plaintiff, however, asserts that the Congress lifted the bar of § 322(c) with respect to net operating loss carry-backs by means of § 322(g)[2] of the 1939 Code.

Section 322(g) begins with the assertion that a carry-back due to a net operating loss or to an unused excess profits credit may be allowed even though otherwise prevented by a rule of law. Examples of what the drafters of § 322(g) meant by the phrase "rule of law" spring readily to mind. Indeed, illustrations are supplied by rules of law relied upon by the defendant in this suit. The statutory bar set forth in § 322(c) and the de-cisional rule of *res judicata* are illustrations of rules of law which might otherwise prevent the allowance of a carry-back. Section 322(g), however, does not confer on a taxpayer's claim for refund based on a carry-back some quality of immortality against periods of limitation which is denied to other claims for refund. Section 322(g) serves to aid a taxpayer only if his claim for refund attributable to a carry-back is filed within the period provided for in § 322(b) (6).

At this point, it is clear that the dispositive issue in this case turns on the following question: was the claim for refund filed by the plaintiff timely under the provisions of § 322(b) (6)? To resolve this question it becomes crucial to examine the language of § 322(b) (6).[3] Subsection (b) (6) gives an option to the taxpayer concerning the period of time during which he may make claim for refund based on a carry-back. Subsection (b) (6) gives the taxpayer an extension of the 3-year period of limitations for

---

1. Section 322(c) of the Internal Revenue Code of 1939, 53 Stat. 92, reads as follows:

   "(c) Effect of petition to board.—If the Commissioner has mailed to the taxpayer a notice of deficiency under section 272(a) and if the taxpayer files a petition with the Board of Tax Appeals within the time prescribed in such subsection, no credit or refund in respect of the tax for the taxable year in respect of which the Commissioner has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of such tax shall be instituted in any court except— * *."

   *Note* that § 504(c), Revenue Act of 1942, 56 Stat. 957, 26 U.S.C.A. § 1100 note, provides that all references in any statute to the "Board of Tax Appeals" or to the "Board" shall be considered to be made to the Tax Court of the United States.

2. Section 322(g), as added by § 5(d), Tax Adjustment Act of 1945, 59 Stat. 517, 524, reads in material part:

   "(g) Overpayments Attributable to Net Operating Loss Carry-Backs and Unused Excess Profits Credit Carry-Backs.—If the allowance of a credit or refund of an overpayment of tax attributable to a net operating loss carry-back or to an unused excess profits credit carry-back is otherwise prevented by the operation of any law or rule of law other than section 3761, relating to compromises, such credit or refund may be allowed or made, *if claim therefor is filed within the period provided in subsection (b) (6).* * * *." [Emphasis supplied.]

3. Section 322(b) (6), as added by § 5(b), Tax Adjustment Act of 1945, 59 Stat. 517, 524, and as amended by § 122(e), Revenue Act of 1945, 59 Stat. 556, 569, reads in material part:

   "(6) Special period of limitation with respect to net operating loss carry-backs and unused excess profits credit carry-backs.—If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period of limitation prescribed in paragraph (1), the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month *following the end of the taxable year of the net operating loss* or the unused excess profits credit which results in such carry-back, or the period prescribed in paragraph (3) *in respect of such taxable year*, whichever expires later. * * *" [Emphasis supplied.]

claims for refund of taxes to a period of 38½ months following the close of the loss year. The plaintiff does not contend that its claim for refund is timely within the 38½-month period. Subsection (b) (6), however, also provides that the taxpayer may claim for refund within the period set out in § 322(b) (3).[4] Section 322(b) (3) declares that the claim for refund may be made within the period of an agreement extending the time for assessment for the year or within 6 months of the expiration of the agreement, but that the time for filing shall not expire prior to 2 years from the time the tax was paid.

The plaintiff says that its claim for refund is timely within the meaning of § 322(b) (3). It is defendant's contention that plaintiff's claim was not timely filed within § 322(g) because there was no agreed extension of limitations within the meaning of § 322(b) (3). The only agreed extension of limitations was for the year 1944 and this agreed extension of limitations expired on June 30, 1951. Although plaintiff's claim for refund for the year 1944 was not filed until August 30, 1953, 25 months after the agreement had expired, it was filed within 2 years of the final payment of the deficiency assessment of the excess profits taxes for 1944. However, the plaintiff's claim for refund is based on the fiscal year 1946 and for that year no agreement has ever been entered into by the taxpayer with the defendant although without such an agreement plaintiff is not within the provisions of § 322(b) (6).

Defendant insists that the alternative to the 38½-month option in § 322(b) (6) does not refer to an agreement with respect to the year to which the net operating loss or unused excess profits credit is carried back (1944), but rather to the net operating loss or unused credit year itself (1946). The specific language of § 322(b) (6), "the period prescribed in paragraph (3) in respect of such taxable year," follows the clause with respect to the 38½ months "following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back." Therefore, the defendant reasons that the phrase "such taxable year" refers to the net operating loss year itself—in this case, the year 1946. Defendant argues that there was no agreed extension of limitations for fiscal 1946 and that therefore the *sine qua non* of § 322(b) (3) applicability is not met.

There is apparently little in the decisions to indicate whether the phrase "such taxable year" refers to the net operating loss year or to the year to which the credit is carried back. The Tax Court held in Claremont Waste Mfg. Co. v. Commissioner, 1955, 24 T.C. 1087, that "such taxable year" refers to the net operating loss year rather than the year to which the credit is carried back. However, on appeal of that case to the United States Court of Appeals for the First Circuit, which affirmed the Tax Court on other grounds, it was remarked by way of dictum that the words "such taxable year" referred to the year to which the credit is carried back. See Claremont Waste Mfg. Co. v. Commissioner of Internal Revenue, 1 Cir., 1956, 238 F.2d 741.

4. Section 322(b) (3), as added by § 169 (a), Revenue Act of 1942, 56 Stat. 798, 876, and as amended by § 1(a), Act of August 18, 1950, 64 Stat. 464, provides in material part:

"(3) Exceptions in the case of waivers. —If both the Commissioner and the taxpayer have, within the period prescribed in paragraph (1) for the filing of a claim for credit or refund, agreed in writing under the provisions of section 276(b) to extend beyond the period prescribed in section 275 the time within which the Commissioner may make an assessment, the period within which a claim for credit or refund may be filed, or credit or refund allowed or made if no claim is filed, shall be the period within which the Commissioner may make an assessment pursuant to such agreement or any extension thereof, and six months thereafter, * * *. Notwithstanding the foregoing provisions of this paragraph, the period within which a claim for credit or refund may be filed, or credit or refund allowed or made if no claim is filed, shall not expire prior to two years after the time the tax was paid, * * *."

As we read the legislative history and the plain language of the statute, we conclude that the phrase "such taxable year" in § 322(b) (6) refers to the net operating loss year. We reach this determination on the basis of the legislative history of § 322(b) (6). We think H.Rep. No. 489, 79th Cong., 1st Sess., reported in 1945 C.B. 566 at p. 586, sheds considerable light on the meaning of § 322(b) (6):

"Subsection (b) of section 5 adds a new paragraph (6) at the end of section 322(b) of the Code to provide that in the case of an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the normal 3-year period of limitation, there shall apply whichever of the following two periods expires later:

"(1) The 3-year period provided in section 322(b) (1) for the filing of a claim for credit or refund, or the allowance of a credit or refund *with respect to the year of the net operating loss or the unused excess profits credit:*

"(2) The period within which claim for credit or refund may be allowed or made, or claim for credit or refund filed, *with respect to the year of net operating loss or the unused excess profits credit* if such period is extended pursuant to the provisions of section 322(b) (3) of the Code as a result of the execution of an agreement extending the time within which the Commissioner may make an assessment with respect to *such* year." [Emphasis supplied.]

It is clear from the foregoing that the required claim for refund must be filed within 6 months after the expiration of the taxpayer's agreement extending the time of assessment for the year of net operating loss. The crucial factor here is that the plaintiff completely fails to meet this requirement. Plaintiff had an agreement with the Commissioner for the year 1944 but *not* for the year 1946, which is the year of the net operating loss.

In summary, the plaintiff has not surmounted the obstacle which § 322(c) presents to the maintenance of this suit. Plaintiff has urged that § 322(g) frees it from the statutory bar of § 322(c). It is our conclusion that the plaintiff is mistaken. We believe that § 322(g) is of no assistance to the plaintiff in this case. Section 322(g) requires that timely claim for refund be made as provided in § 322(b) (6). Section 322(b) (6) specifically sets forth one period of limitation and also makes available the period of limitation set forth in § 322(b) (3) with respect to the year of net operating loss. Plaintiff has failed to show that it comes within either of these periods. We therefore conclude that the plaintiff is prevented by § 322(c) from maintaining this action in this court.

Since we find that § 322(c) bars this suit, we think it is unnecessary to resolve the defendant's contention that, independently of § 322(c) the doctrine of *res judicata* bars this action because the excess profits tax question here at issue could have been litigated before the Tax Court in 1952. Similarly, the fact that the plaintiff has not been able to surmount the statutory bar of § 322(c) makes it unnecessary for us to inquire into the merits of the plaintiff's claim for a refund of excess profits taxes for the fiscal year which ended on September 30, 1944.

The defendant's motion for summary judgment is granted, while plaintiff's similar motion is denied.

The plaintiff's petition will be dismissed.

It is so ordered.

REED, Justice (retired), sitting by designation, and DURFEE, LARAMORE and MADDEN, Judges, concur.