EMPIRE TRUST COMPANY and Peter Dauk, Executors of the Will of Mary Lois K. McIntosh, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 8739.

United States District Court
D. Connecticut.

Feb. 5, 1963.

732

J. Kenneth Bradley and Frederick Pope, Jr., of Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for plaintiffs.

Edward S. Smith, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., and David A. Wilson, Jr., Washington, D. C.; Robert C. Zampano, U. S. Atty., New Haven, Conn., on the brief), for defendant.

TIMBERS, District Judge.

Defendant's motion, pursuant to Rule 12(b) (1) and (6), Fed.R.Civ.P., to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted, raises questions regarding the mutually exclusive provisions of the Internal Revenue Code[1] for Tax Court or District Court relief.

### FACTS

The action is brought by the executors of the will of Mary Lois K. McIntosh, deceased, pursuant to 28 U.S.C. § 1346 (a) (1), to recover $44,098.77 of federal estate taxes claimed to have been erroneously assessed and collected.

May 21, 1949 decedent died a resident of Wilton, Connecticut. June 7, 1949 letters testamentary were issued to plaintiff executors[2] by the Probate Court for

---

1. Int.Rev.Code of 1939, § 911, 26 U.S.C. § 911 (1952) [now Int.Rev.Code of 1954, § 6512(a), 26 U.S.C. § 6512(a) (1958)].

2. Plaintiff Empire Trust Company is one of the original executors. Plaintiff Peter

Dauk is a successor executor, having been appointed November 5, 1957 to succeed Russell L. McIntosh who served as an original executor until his death September 3, 1957.

the District of Norwalk where the will was admitted to probate.

August 18, 1950 plaintiffs filed with the Collector of Internal Revenue for the District of Connecticut a federal estate tax return showing due a tax of $133,927.02 which was paid with the return.

August 5, 1953 the Commissioner of Internal Revenue assessed against plaintiffs an additional federal estate tax of $254,759.76. The assessment of this additional tax resulted from the Commissioner's determination that there should be included in decedent's gross estate the corpus of a certain trust known as the "Boland Trust" by virtue of decedent's release of powers under that trust; such release, according to the Commissioner's determination, was a relinquishment made in contemplation of death.[3]

October 29, 1953 plaintiffs filed a petition in the Tax Court for redetermination of the proposed deficiency. After trial, the Tax Court sustained the deficiency assessment to the extent of $235,872.10, computation of which was agreed upon for entry of decision May 15, 1956. Estate of McIntosh v. Commissioner of Internal Revenue, 25 T.C. 794.

Upon appeal by plaintiffs, the Court of Appeals for the Second Circuit affirmed the Tax Court. 248 F.2d 181. January 13, 1958 certiorari was denied. 355 U.S. 923, 78 S.Ct. 366, 2 L.Ed.2d 353.

After receiving a first notice of demand dated April 10, 1958 from the District Director of Internal Revenue, plaintiffs May 27, 1958 requested a recomputation of the amount of tax and interest claimed to be due, taking into account (i) additional administration expenses and (ii) additional state inheritance taxes. The former were incurred in the "Boland Trust" litigation in the Tax Court and other federal courts, referred to above; the latter were a direct result of the decision in the same litiga-

tion that the trust was part of the estate. Plaintiffs' request for recomputation was denied July 25, 1958 and August 13, 1958.

Subsequent to issuance of the first notice of demand April 10, 1958, plaintiffs were informed that the value of the corpus of the "Boland Trust" had been reduced to the extent of trustees' fees payable on termination of the trust upon the date of decedent's death; these fees in fact were paid December 18, 1958.

The amount of the deficiency was paid in full between April and October 1958.

April 13, 1960 plaintiffs filed a claim for refund. More than six months having elapsed since filing the claim for refund without either allowance or rejection thereof,[4] the instant action was brought to recover the claimed refund.

Defendant has filed what Judge Magruder has characterized as a "double-barreled" motion to dismiss (Moir v. United States, 149 F.2d 455, 457 (1 Cir. 1945)) on the following grounds:

(1) That the complaint fails to state a claim against defendant upon which relief can be granted, in that it affirmatively appears on the face of the complaint that plaintiffs filed a petition with the Tax Court with respect to deficiencies in federal estate tax asserted against plaintiffs, the matters upon which relief is here sought were or could have been raised in the Tax Court and the judgment of the Tax Court, having become final, is res adjudicata as to all matters upon which relief is here sought; and

(2) That it affirmatively appears on the face of the complaint that this Court lacks jurisdiction of the subject matter of this action in that plaintiffs' filing of a petition in the Tax Court with respect to a deficiency determined by the

---

3. Int.Rev.Code of 1939, § 811(c) and (d), 26 U.S.C. § 811(c) and (d) (1952) [now Int.Rev.Code of 1954, §§ 2035–2038, 26 U.S.C. §§ 2035–2038 (1958)].

4. Int.Rev.Code of 1954, § 6532(a) (1), 26 U.S.C. § 6532(a) (1) (1958) [formerly Int.Rev.Code of 1939, § 3772(a) (2), 26 U.S.C. § 3772(a) (2) (1952)].

Secretary or his delegate to be due from the estate of plaintiffs' decedent is a bar to institution of this action in this Court.[5]

## QUESTIONS PRESENTED

Two questions are presented, the answers to which are dispositive of this motion:

(1) Does Section 911 bar this tax refund suit in view of the prior filing of a petition in the Tax Court?

(2) Does Section 813(b) save from the bar of Section 911 plaintiffs' claim for refund to the extent it is based on payment of state inheritance taxes?

The Court holds that question (1) must be answered in the affirmative, question (2) in the negative.

## I

## SECTION 911 BARS THIS TAX REFUND SUIT IN VIEW OF THE PRIOR FILING OF A PETITION IN THE TAX COURT

The Court sustains the second ground of defendant's motion and holds that this tax refund suit is barred by Section 911[6] in view of the prior filing of a petition in the Tax Court.

The instant case is controlled, in the opinion of this Court, by the principle enunciated by the Court of Appeals for the Second Circuit in Elbert v. Johnson,

164 F.2d 421 (2 Cir. 1947). Construing language of an earlier Internal Revenue Code provision[7] in all material respects similar to Section 911, the legislative purpose back of the mutually exclusive provisions for Tax Court or District Court relief was stated as follows (164 F.2d 421, 423–424):

"That purpose was to achieve finality in the determination by the Board of Tax Appeals (now the Tax Court) of the taxpayer's liability for the year in suit. When notified of a deficiency, the taxpayer may litigate its legality either by appealing to the Tax Court before he pays, or by paying and thereafter bringing an action against the United States or the collector to recover any overpayment. But choice of the first alternative precludes resort to the second. It is not the decision which the Tax Court makes but the fact that the taxpayer has resorted to that court which ends his opportunity to litigate in the District Court his tax liability for the year in question. Moir v. United States, 1 Cir., 149 F.2d 455, 460; Brooks v. Driscoll, 3 Cir., 114 F.2d 426, 429. Hence it is immaterial that the issue sought to be litigated in the District Court was not presented to the Tax Court, or could not have been presented because based on subsequent events. As this

5. Int.Rev.Code of 1939, § 911, 26 U.S.C. § 911 (1952) [now Int.Rev.Code of 1954, § 6512(a), 26 U.S.C. § 6512(a) (1958)].

6. Int.Rev.Code of 1939, § 911, 26 U.S.C. § 911 (1952) [now Int.Rev.Code of 1954, § 6512(a), 26 U.S.C. § 6512(a) (1958)]:
"If the Commissioner has mailed to the executor a notice of deficiency under section 871(a) and if the executor files a petition with the Tax Court of the United States within the time prescribed in such subsection, no refund in respect of the tax shall be allowed or made and no suit for the recovery of any part of such tax shall be instituted in any court, except—
"(a) As to overpayments determined by a decision of the Tax Court which has become final; and

"(b) As to any amount collected in excess of an amount computed in accordance with the decision of the Tax Court which has become final; and
"(c) As to any amount collected after the statutory period of limitations upon the beginning of distraint or a proceeding in court for collection has expired; but in any such claim for refund or in any such suit for refund the decision of the Tax Court which has become final, as to whether such period had expired before the notice of deficiency was mailed, shall be conclusive."

7. Int.Rev.Code of 1939, § 322(c), 26 U.S.C. § 322(c) (1946) [now Int.Rev. Code of 1954, § 6512(a), 26 U.S.C. § 6512 (a) (1958)].

court recognized in Merrill v. United States, 2 Cir., 152 F.2d 74, at page 75, section 322(c) is not based on doctrines of res judicata but is in effect a statute of limitations."

█ Both sides in the present case rely on Cleveland v. Higgins, 148 F.2d 722 (2 Cir. 1945), cert. denied, 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428 (1945).[8] Defendant argues that it supports its position that the judgment of the Tax Court, having become final, is res adjudicata as to all matters upon which relief is sought in this Court (first ground of defendant's motion to dismiss). Plaintiffs argue that it supports their position that the judgment of the Tax Court is not res adjudicata because the expenses which are the subject matter of the refund claim were incurred or paid after conclusion of the Tax Court suit and therefore are not expenses which "might have been included" in the Tax Court petition.

The short answer to the arguments of both sides is that the bar of Section 911 is a statute of limitations; principles of res adjudicata do not apply. Elbert v. Johnson, supra, at 424; Merrill v. United States, 152 F.2d 74, 75 (2 Cir. 1945).

It is true that in Cleveland, where two successive refund suits were brought in the District Court, the Court of Appeals, in dismissing the second one, held that the final decision in the first one was "res adjudicata not only as to what was included in the refund claim but as to what might have been included. Nor does the fact that the refund claim did not cover all which might have been included therein prevent the judgment from being res adjudicata." (148 F.2d 722, 723). But no statute of limitations, such as controls here, was involved in Cleveland.

██ It is not the *decision* of the Tax Court but taxpayer's *resort* to the Tax Court which precludes his subsequent invoking jurisdiction of the District Court. Elbert v. Johnson, supra at 424. By electing to proceed in the Tax Court, plaintiffs have ousted this Court of jurisdiction. United States v. Wolf, 238 F.2d 447 (9 Cir. 1956); Fiorentino v. United States, 226 F.2d 619, 621 (3 Cir. 1955); Elbert v. Johnson, supra; Moir v. United States, supra at 460; City Bank Farmers Trust Co. v. United States, 143 F.Supp. 921 (S.D. N.Y.1956); Bear Mill Mfg. Co. v. United States, 93 F.Supp. 988 (S.D.N.Y.1950).

█ As so often happens in applying statutes of limitations, the result here is a harsh one. Balanced against such a harsh result are the usual considerations of public policy reflected in legislative enactment of statutes of limitations; in particular, this statute of limitations reflects Congressional policy of doing away with uncertainty and delay in the assessment and collection of federal estate taxes. Cf. Cleveland v. Higgins, supra at 724.

But the harshness of this statute of limitations has been recognized, as in Moir, where the deductibility of the expense in question in the subsequent action in the District Court could not have been litigated in the Tax Court. Moir v. United States, supra at 460. There are at least two methods of avoiding such harshness in a case like this where expenses incurred after filing the Tax Court petition depend on the decision of the Tax Court and any appellate review thereof:

(1) The admittedly cumbersome procedure suggested by Judge Magruder in Moir v. United States, supra at 460 n. 8, involving filing alternate claims for anticipated expenses such as attorneys fees in the Tax Court and appellate proceedings arising therefrom, depending upon the course the case takes. Similarly, claims could be

8. Cf. Martin v. Brodrick, 177 F.2d 886 (10 Cir. 1949); Van Dyke v. Kuhl, 171 F.2d 187 (7 Cir. 1948); Magruder v. Safe Deposit & Trust Co. of Baltimore.

159 F.2d 913 (4 Cir. 1947). These cases, from other circuits, support plaintiffs' contention that the judgment of the Tax Court is not res adjudicata.

filed in the Tax Court petition for other anticipated expenses such as the state inheritance taxes in this case which arise as a direct result of the decision adverse to the taxpayers in the Tax Court. See also Cleveland v. Higgins, supra at 724–725.

(2) The procedure provided by Rules 50 and 51 of the Rules of Practice of the Tax Court.[9] Under Rule 51, if petitioner estimates the additional expenses which must or might result from an unfavorable decision on the issue before the Tax Court, and the parties cannot agree under Rule 50 on the deduction for expenses incurred at or after the trial, "petitioner may move to reopen the case for further trial on that issue provided it is raised in the petition or by amendment thereto." Had plaintiffs raised in their petition before the Tax Court these future though indefinite expenses, the Tax Court could have reopened the case after the additional expenses resulting

from its decision were determined and have tried the issue of these expenses.

## II

### SECTION 813(b) DOES NOT SAVE FROM BAR OF SECTION 911 PLAINTIFFS' CLAIM FOR REFUND TO THE EXTENT IT IS BASED ON PAYMENT OF STATE INHERITANCE TAXES

Plaintiffs seek to avoid the bar of Section 911 by claiming that a second cause of action is created by Section 813(b) to the extent their claim for refund is based on payment of state inheritance taxes.[10] More particularly, plaintiffs contend that their claim for credit for the additional inheritance taxes is valid under subsection (3) of Section 813(b).

The short answer to plaintiffs' contention is that their claim for refund based on payment of state inheritance taxes is governed by subsection (1), rather than subsection (3), of Section 813(b).

Subsection (3) was added to Section 813(b) (and to the corresponding section

9. 26 C.F.R. § 701.50–701.51 (1961), 22 Fed.Reg. 278 (1957).

10. Int.Rev.Code of 1939, § 813(b), 26 U.S.C. § 813(b) (1952) [now Int.Rev. Code of 1954, § 2011, 26 U.S.C. § 2011 (1958)]:

"Sec. 813. [As amended by the Technical Changes Act of 1958] CREDITS AGAINST TAX

\* \* \* \* \*

"(b) Estate, succession, legacy, and inheritance taxes. The tax imposed \* \* \* shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State \* \* \*. The credit allowed \* \* \* shall include only such taxes as were actually, paid and credit therefor claimed within four years after the filing of the return required by section 821 or 864, except that—

"(1) If a petition for redetermination of a deficiency has been filed with The Tax Court of the United States within the time prescribed in section 871, then within such four-year period or before the expiration of 60 days after the decision of The Tax Court becomes final.

"(2) If, under section 822(a) (2) or section 871(h), an extension of time has been granted for payment of the tax shown on the return, or of a deficiency, then within such four-year period or before the date of the expiration of the period of the extension. \* \* \*

"(3) If a claim for refund or credit of an overpayment of tax imposed by this chapter has been filed within the time prescribed in section 910, then within such 4-year period or before the expiration of 60 days from the date of mailing by certified mail or registered mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of any part of such claim, or before the expiration of 60 days after a decision by any court of competent jurisdiction becomes final with respect to a timely suit instituted upon such claim, whichever is later."

Refund based on the credit may (despite the provisions of sections 910 to 912, inclusive) be made if claim therefor is filed within the period above provided. Any such refund shall be made without interest.

of the Internal Revenue Code of 1954) by the Technical Changes Act of 1958 (72 Stat. 1657). Prior to this amendment, the section had existed in substantially the same form for many years. As will be noted from a reading of the section prior to its amendment, it provided a special period of limitation for claiming a credit for state inheritance taxes where a petition had been filed with the Tax Court and where an extension of time had been granted for payment of the tax shown on the return. The 1958 amendment added a third classification in which a special period of limitation would apply. The excerpt from the report of the House Ways and Means Committee, set forth in the margin,[11] indicates the purpose of the addition of subsection (3).

Congress was concerned with those taxpayers who "initially pay a disputed amount and then file claim for refund". The addition of subsection (3) was solely for the purpose of correcting what Congress felt to be discriminatory treatment. Plaintiffs do not fall within this classification. They did not "initially pay a disputed amount." Their dispute was taken to the Tax Court. Congress had no intention of affording taxpayers in this classification a new period of limitation for filing claims of this sort.

An analysis of Section 813(b) demonstrates the fallacy of plaintiffs' contention. The subsection is entitled "Period of Limitations on Credit," the main section being entitled "Credit for State Death Taxes." The subsection provides a special period of limitations for taxpayers in three distinct classifications. The first classification concerns those taxpayers who file a petition for redetermination of a deficiency with the Tax Court. Plaintiffs filed such a petition for redetermination of a deficiency. The portion of Section 813(b) applicable to plaintiffs is subsection (1), rather than subsection (3).

Under subsection (1) plaintiffs are allowed the basic four-year period for filing a claim or a period ending 60 days

---

11. H.R.Rep. No. 775, 85th Congr., 1st Sess. (1958):

SEC. 53. PERIOD OF LIMITATION FOR FILING CLAIM FOR CREDIT FOR STATE DEATH TAXES.

Under present law a credit is allowed against a portion of the tentative estate tax for State death taxes. These State death taxes generally must be paid within 4 years after the estate tax return is filed in order to be eligible for this credit. However, if an extension of time is granted to pay the Federal estate tax, the State death taxes need not be paid until after this period of extension. Similarly, if a petition for redetermination of a deficiency is filed with the Tax Court within 90 days after notice of a deficiency is mailed, the State death taxes need not be paid until 60 days after the Tax Court's decision becomes final in order to be eligible for credit against the estate tax. *However, if the Federal estate tax is paid and then a refund claim is subsequently filed, no extension of time is available under existing law for the payment of State death taxes.*

*Your committee believes that this is discrimination against those who initially pay a disputed amount and then filed claim for refund as against those who* take their problem to the courts without paying the disputed amount. As a result, your committee's bill amends section 2011(c) relating to the period of limitation on the credit for State death taxes by adding a new paragraph. This new paragraph provides that where timely claims for refund have been filed with respect to Federal estate taxes, credits for State death taxes can still be claimed if these taxes are paid within 60 days after the Treasury Department has notified the taxpayer of the disallowance of part or all of his claim, or within 60 days after a final decision of a court acting upon this claim.

The 1939 Code is also amended by your committee's bill to provide a similar extension in time for the payment of State death taxes for these taxes to be claimed as credits against the Federal estate tax.

The amendment to the 1939 Code is applicable to estates of decedents dying after February 10, 1939, and on or before August 16, 1954. The amendment made to the 1954 Code is applicable with respect to estates of decedents dying after August 16.

This provision is expected to result in a negligible revenue loss. (Emphasis added)

after the decision of the Tax Court becomes final (in this case, March 14, 1958). The claim in this case was not filed within such period.

Reading Section 813(b) as a whole, it is clear that the claim for refund or credit referred to in 813(b) (3) is a claim for refund based on the amount or merits of the federal tax, not a claim for credit against such tax by reason of payment of state inheritance taxes. This is not plaintiffs' situation.

The only extension of time for claiming credit for payment of state inheritance taxes applicable to plaintiffs is provided in Section 813(b) (1). Plaintiffs' claim, not having been filed within the period so provided, is barred.

Defendant's motion to dismiss the complaint is granted. An order has been entered accordingly.